## Mary Edwards et al., Appts., v. Frank F. Brightly.

A bill in equity will not lie against an attorney at law, to compel him to surrender a paper alleged to have been fraudulently obtained by his client, without joining the owner of the paper as a party defendant in the bill.

The paper in this case *held* to be of little consequence and not a proper subject upon which to found a decree of a court of equity.

(Argued January 4, 1888. Decided January 23, 1888.)

January Term, 1887, No. 234, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal by Mary Edwards *et al.*, from a decree of Common Pleas No. 1 of Philadelphia dismissing their bill which prayed for the surrender and cancelation of a certain paper. Affirmed.

NOTE.—All parties in interest must be made defendants in a proceeding in equity which will affect that interest (Philadelphia v. River Front R. Co. 133 Pa. 134, 19 Atl. 356; Huston v. Sellers, 12 Phila. 520; Alexander v. Moody, 7 Sad. Rep. 552; Maguire v. Heraty, 163 Pa. 381, 43 Am. St. Rep. 800, 30 Atl. 151; Donnelly v. Rafferty, 172 Pa. 587, 33 Atl. 754) ; or the representatives of such party (Markle's Estate, 5 Pa. Dist. R. 47, 17 Pa. Co. Ct. 337). If a defendant is not joined, the reason therefor should appear. Bickley v. Paul, 11 Phila. 256.

The facts of the case are as follows:

Jane Kemp, the widow of Joseph Kemp, deceased, died May 12, 1883, being seised in fee of a lot of ground in Germantown, 50 feet front on Centre street, and in depth 131 feet, on which lot there were four houses erected. The property originally belonged to Joseph Kemp. In 1869 he conveyed it to John Kemp, who in 1874 conveyed it to Jane. Although she thus had the title by deed, the property was (in so far as it could be effectively done) also devised to her by the will of Joseph, who died in 1882.

Jane died intestate, and her heirs at law were persons in a poor condition of life living in Great Britain. At the time of her death she resided in one of the four houses, in which there also lived one Thomas Adams.

Lydia Pendergast, living in Washington, was a relative of Joseph Kemp, and believing that he should have devised the Germantown property to her, she caused Adams to maintain possession of the house in which he lived, in her behalf, and she employed A. M. Beveridge, Esq., of Philadelphia, to legally represent her.

Mr. Beveridge went to England in the summer of 1883, and while there he sought to effect an arrangement by which the Germantown property should be sold and one half the proceeds paid to his client and the other half to the heirs of Jane Kemp; and he procured Mary Edwards's signature to this paper:

Orphans' Court of Philadelphia County, ⎱
    State of Pennsylvania, 1883. ⎰

It is hereby agreed between the undersigned that the administrator to above-named estate shall forthwith apply to the orphans' court for the city and county of Philadelphia, for an order of sale of the real estate of decedent above named, situated on Centre street, Germantown, for the purpose of payments of debts, mortgages, and otherwise expenses of costs, the balance to be distributed as follows:

One half to Miss Lydia Pendergast, of Washington, District of Columbia; one fourth to Mrs. Mary Edwards, of Liverpool, England; and one fourth to the children and grandchildren of Mrs. Ann Jones, deceased. The above arrangement is con-

ditioned on the sum of $500 being first paid out of the net proceeds of sales to Charles Edwards, of Australia.

Mary Edwards.

Witness: Andrew M. Beveridge.

As an inducement to these heirs to make such a settlement, Mr. Beveridge made these statements: He represented "that Joseph Kemp had devised one half of the Germantown property to his client subject to the life estate of his wife Jane; that in 1874 Joseph being in money trouble conveyed this property directly to his wife, intending to have it reconveyed when his troubles were over; that he neglected to do so; that his intention was notorious, could readily be established, and a bill in equity would set aside the title of Jane, when Joseph's will would take effect, and vest in Lydia Pendergast the property devised to her."

Mr. Beveridge believed these representations to be true, although in point of fact they were untrue, and upon these representations Mrs. Edwards was induced to sign and did sign a paper intended to carry out the compromise. When Mrs. Edwards learned the truth on February 8, 1884, she wrote a letter to Mr. Beveridge withdrawing her signature.

Meantime F. F. Brightly, Esq., became the attorney of Lydia Pendergast, and the paper signed by Mrs. Edwards came into his possession. On behalf of the heirs of Jane Kemp a demand was made upon Mr. Brightly that he surrender the paper. He refused, and this bill was filed against him to compel its surrender.

The master refused the prayer of the bill, and recommended that it be dismissed, upon three grounds: (1) Because the bill alleged that Mr. Beveridge was guilty of fraud in his representations, and the proof was that he made a mistake; (2) because there was a pending ejectment by the heirs of Jane Kemp for the property in the possession of Adams; and (3) because Lydia Pendergast was not a party defendant.

The court dismissed the exceptions filed to this finding, and entered a decree dismissing the bill. Complainants then took this appeal, specifying for error this action of the court.

*E. F. Hoffman,* for appellants.—The controlling principle of law invoked is that stated by SHARSWOOD, J., in Wilson v. Getty, 57 Pa. 266, in these words: "Whenever a deed or writing ought

not to be used it is against conscience for the party holding it to retain it. Whether it is inequitable from fraud, accident, or mistake, or it has become so from entire failure of consideration, while it exists it is always liable to be applied to improper purposes, and it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured."

In the following cases the principle was applied where there was no fraud: Bingham v. Bingham, 1 Ves. Sr. 126; and Cocking v. Pratt, 1 Ves. Sr. 400; Evans v. Llewellyn, 2 Bro. Ch. 125; Torrance v. Bolton, L. R. 8 Ch. 118.

The master admitted the principle but declined to apply it, because he alleged that the bill charged fraud, and the proof was of mistake.

It is true that when the bill was heard there was a pending ejectment as to the Germantown property (since determined in favor of the English heirs against Lydia Pendergast, who has taken to its judgment a writ of error); and on the authority of Buck Mountain Coal Co. v. Conrad, 6 Phila. 111, the master with some hesitation concludes that in such case a court of equity will not order a paper or deed in the title to be delivered up. It certainly will not and ought not, and for the sufficient reason that to do so would be to prejudice the very question to be tried in the ejectment. In the above case the plaintiff brought an ejectment and then filed a bill to enjoin the defendant from setting up in that suit his title deeds. The prayer of the bill was refused for the manifest reason above stated. In the case at bar, by no possibility could the paper sought to be canceled affect the ejectment, because: (1) The paper was signed by one and the ejectment was brought by half a dozen heirs; (2) the paper on its face was not to be effective until signed by all disputants, and it never was so signed; and (3) the paper in no way related to the question of right or title but simply to a mode of dividing the money which the land might bring when sold.

It is found that Lydia Pendergast was a resident beyond the jurisdiction of this court and of the state; and yet the master has decided she should have been a party under the act of April 6, 1869, 1 Purdon's Digest, p. 698, pl. 47. That act makes it lawful to take this course, with respect to a nonresident; it does not make it obligatory. The defendant did not invoke it, nor ought the master to have done so, in view of the defendant's

statement in answer, that "I do decline to surrender the paper to plaintiffs, as I hold the same as attorney for the said Lydia Pendergast. I have been notified by her in writing not to deliver it to anyone, but to retain the same as her attorney."

*Frank F. Brightly,* appellee, *pro se.*

PER CURIAM:

This case was properly disposed of in the court below. The paper in controversy is of little or no consequence, and certainly not a proper subject on which to found a decree of a court of equity. Were it otherwise, however, and had it been obtained as alleged, by fraud, there is the want of proper parties. Mr. Brightly is but a depositary or bailee, and until the owners of it are properly brought into court, no binding decree can be made either to surrender or cancel it.

Decree affirmed, appeal dismissed, at costs of appellants.