## LEE *v.* UNITED STATES GRAPHITE CO.

1. CORPORATIONS—CONTRACTS—ULTRA VIRES—INSURANCE.
   A corporation engaged in the business of mining graphite has authority to purchase a business of manufacturing stove polish made with graphite in consideration of a contract to pay the owner $100 a month for his services as manager during his lifetime; the contract not being a mere agreement for an annuity.

2. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW.
   The contention that such contract is in restraint of trade is not open for consideration when the point was not made in the trial court.

3. CONTRACTS—RATIFICATION—CORPORATIONS.
   Where the corporate officer who made the agreement reported the results to the directors, without going into details concerning the time during which payments should be made, and the corporation thereafter made numerous yearly payments and carried on the purchased business, and there was evidence tending to show that the entire arrangement was known to the directors, the question of ratification was a question of fact.

4. Same—Consideration—Sales.

Sufficient consideration to support the agreement is found in the transfer of plaintiff's business, his furnishing the names of customers and other information in accordance with the alleged agreement, which provided that he should not engage in the business and should aid the defendant as far as ·possible.

Error to Saginaw; Gage (William G.), J. Submitted February 24, 1910. (Docket No. 86.) Decided April 1, 1910.

Assumpsit by John B. Lee against the United States Graphite Company for goods sold and delivered. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Humphrey & Grant,* for appellant.

*John F. O'Keefe,* for appellee.

Montgomery, C. J. This action was brought by the plaintiff to recover money claimed to be due him by virtue of a contract which he asserts was entered into in the city of Chicago on the 26th of January, 1904, with Edward C. Ewen, the then president of the defendant company. The record shows that the defendant company is a corporation engaged in the business of mining graphite in Mexico, refining the graphite in Saginaw, and marketing it and its products, including the stove polish known as the "Raven Stove Polish." The plaintiff commenced work for the defendant in 1892 at a salary of $2,000 a year. He continued in this employment until January, 1894. When he commenced working for the defendant, it did not make the Raven stove polish. This name was proposed by plaintiff and adopted by the company. It afterwards developed that the name was an infringement of a trade-mark,' and defendant company became the owners by purchase of the trade-mark. In 1894 an arrangement was made between plaintiff and defendant by

which all of the Raven stove polish business was turned over to the plaintiff, and he ceased to draw pay from the company. From this time until 1904 plaintiff conducted the Raven stove polish business as his own, bought the supply for his customers from the defendant company, paid for the same, and sold on his own account. By attention to business, advertising, and by reason of his acquaintance, the business rapidly increased under Mr. Lee's management. The gross sales for the 10-year period beginning January, 1894, amounted to upwards of $66,000. The plaintiff's profits the first year were only about $300, but they increased from time to time until they reached about $3,000.

In November or December, 1903, Mr. E. C. Ewen, the president of the company, proposed to the board of directors buying the Raven stove polish business from plaintiff and again operating it on its own account, Mr. Lee in the meantime having become nearly disabled by sickness, and being compelled to rely upon his family and other assistants to carry on the business. The plaintiff thought his business was worth $10,000, and asked this sum. Mr. Ewen, the defendant's president, met plaintiff in Chicago on the 26th of January, 1904, and according to the testimony of both Ewen and plaintiff, an agreement was then effected. A memorandum of this agreement was entered by Mr. Lee in his memorandum book, and reads as follows:

"Agreement made with Mr. E. C. Ewen, president of United States Graphite Co., Saginaw, at Great Northern Hotel, Chicago, today, January 26, 1904, regarding me selling stove polish business to United States Graphite Co. Mr. Ewen said my price of $10,000 cash for my business named to him in our talk Jan. 15, '04, at the Union depot was satisfactory, but offered me instead the following which I have accepted; viz.: I turn over my stove polish business to the United States Graphite Co. now giving them my good will, referring all inquiries to them, and do no more stove polish business for myself or any one but them, for which the United States Graphite Co. will pay me $100 each month during my lifetime com-

mencing next month (February) on my death no further payments to be made, and the stove polish business to belong to the United States Graphite Co. forever. I to help them with my advice and experience, and if my health permits help them as they may ask me to. Mr. Ewen said they might not ask any help from me but if they did, and it injured my health, I need not do it.

[Signed] "JOHN B. LEE.

"Correct. 1—26—04.

"E. C. EWEN, President U. S. G. Co."

After this contract was entered into, the defendant took over the business, plaintiff turned over to defendant his list of customers and all the paraphernalia connected with the business, together with cuts, large and small, which he had caused to be made for use in the business, and sent his books of account over and appears to have been able and willing to tender and furnish all advice and assistance of which he was capable from time to time. The defendant's president, the next day after the making of this contract, wrote the manager, inclosing a memorandum showing the agreement with the plaintiff. These communications read as follows:

"THE HOLLENDEN, CLEVELAND, 1—27—1904.

"HARRY: The inclosed explains my deal with Lee. I think best to write it out for you so you can know all about it at once. Will talk program over with you on my return.

"E. C. E."

"THE HOLLENDEN, CLEVELAND, Jan. 27, 1904.

"U. S. G. Co., Saginaw: Arrangements made with Lee in Chicago yesterday was as follows:

"U. S. G. Co. to take back Raven business, and put Lee in charge as mgr. at $100 per month. He as mgr. to go and come from office at his own pleasure on acct. of his health.

"His salary to commence when business is turned over to us, and he can turn it over at once, or on Sept. 1st next when our new office will probably be done. If not turned over at once, Lee is to give us a list of his regular customers which he will continue to sell as at present (until Sept.), and we will leave these customers alone (until

Sept. 1st) but we can sell any one else from now on, at any price or terms we see fit.

"E. C. EWEN, Pres."

Mr. Ewen testifies that on his return home from this trip in the presence of all the directors he explained to them in detail the contract exactly as it was made, and it was approved. For a year and a half from February, 1904, the company paid Mr. Lee monthly by checks drawn for that purpose, signed by the officers of the defendant, $100 a month, and thereafter, until October 15, 1907, paid the plaintiff semi-monthly by checks drawn for $50. At no time during said period was Mr. Lee performing any service in Saginaw other than that provided for in his agreement signed by Ewen. There was testimony tending to show, also, that when this contract was made the authority to deal with Lee and purchase the business back was reposed in Ewen. The jury gave a verdict for the plaintiff for the amount due up to the time the suit was commenced, and, from the judgment entered upon this verdict, the defendant brings error.

A large number of questions are discussed. It is first insisted that the corporation itself did not have the power to make this agreement, as it was in the nature of an agreement for an annuity, and that this agreement would show the corporation to be practically dealing with life insurance and granting and disposing of annuities. We think this is too narrow a construction. The agreement to pay the plaintiff so much per month during his life was based upon a good and sufficient consideration. It involved more than a mere purchase of annuity. It involved supposed benefits to accrue to the company from time to time. It was only a means of measuring the extent of the consideration which should be parted with for the purchase of this business.

It is contended also that this contract would be void as in restraint of trade. This contention was not, so far as the record discloses, made in the court below. In fact in the

opinion of the trial court it is stated that although all the questions of law supposed to be in the case were discussed at length by counsel on the motion to direct a verdict for defendant, no intimation was given by him that he claimed that the alleged agreement was void on this ground. We think the question ought not to be open for consideration at this time, by no means intending to intimate that if it were, it would be deemed to have merit.

It is next alleged that the corporation is not shown to have made the contract claimed. We think there was sufficient evidence to carry this question to the jury, both as to the question of contract and ratification. Indeed, the evidence as to the ratification was almost overwhelming. It is said that the report which Ewen made of his agreement the next day after it was made did not call attention to the full terms of the agreement. It is true that it did not go into detail as to the length of time for which this compensation was to be paid, but that it was to be paid for some period, and that it was not expected to be wholly as compensation for future services, is apparent, and the first inquiry which the directors would make upon receiving such a letter would be naturally for what period of time these payments were to continue. Mr. Ewen testifies that upon his return the full details of this agreement were stated and thoroughly understood by all the directors, and after this occurred, for years payments were made in pursuance of this contract. It would be difficult to imagine a clearer case of ratification. Considerable argument is devoted to the discussion of the question of fact as to whether this contract was ever made as claimed. We do not think it necessary to enter upon that further than to say that there was evidence of such a contract. It was testified to not only by the plaintiff, but by Ewen and by plaintiff's wife.

It is next argued that the agreement was without consideration. It is hardly necessary to discuss this at length. There was enough of consideration in the property turned over to furnish a basis for a contract. But

more than this, it might be open to question as to whether, when the business was turned over to plaintiff, it did not carry with it the right to maintain and establish a trade for himself which should be his independent property. At all events, he was under no obligation to furnish defendant with the names of his customers or any information which should aid them in the conduct of the future business, as the business then being conducted was his independent business. The furnishing of this information was a consideration, and it being deemed sufficient by the parties, would uphold the promise counted upon.

We have examined the other assignments of error with care, and find no prejudicial error committed on the trial, and think the judgment should be affirmed.

OSTRANDER, HOOKER, BLAIR, and STONE, JJ., concurred.