ALFRED DOUCET, Respondent, v. MASSACHUSETTS BONDING AND INSURANCE COMPANY, Appellant.

First Department, December 7, 1917.

Contract — agreement to prevent arrest and imprisonment of person accused of felony is against public policy — voluntary transfer or delivery of personal property cannot be rescinded for want of consideration — appeal — objection that contract is against public policy available though not raised in court below.

A complaint, in an action to recover certain securities or the value thereof, upon the ground of lack of consideration, which alleges that the plaintiff, while his nephew was in custody for embezzling money from a hotel company by which he was employed, in consideration of a promise and agreement by the defendant which had given a bond to the hotel company for the nephew that it would not cause his arrest and imprisonment, deposited with the defendant securities of a certain value as collateral security to protect it against liability or loss on its bond with authority to sell or transfer said securities, fails to state a cause of action because, *first*, the alleged agreement was against public policy and, therefore, illegal and void, and *second*, because the plaintiff voluntarily delivered the securities and parted with an interest therein to an extent necessary to indemnify the defendant, and, therefore, the agreement was fully executed on his part.

Such agreements to prevent the prosecution of a person for a felony are against public policy and the court will refuse to extend its aid to either party thereto.

The objection that the illegality of the contract on the ground that it is against public policy was not raised at Special Term and, hence, cannot be availed of on appeal is immaterial, as such objection may be taken at any time and without answer as the duty with respect thereto devolves on the court in the interest of the public.

A voluntary transfer or delivery of personal property is a gift thereof and cannot be rescinded for want of consideration.

Appeal by the defendant, Massachusetts Bonding and Insurance Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of June, 1917, denying its motion for judgment on the pleadings consisting of a complaint and answer.

*John R. Halsey*, for the appellant.

*Walter L. Bunnell*, for the respondent.

Laughlin, J.:

The point of law presented is whether the complaint is good. The action is brought to recover certain securities which the plaintiff delivered to the defendant on the 23d of December, 1916, or for the value thereof, upon the ground that there was no consideration flowing to the plaintiff from the agreement under which the securities were so delivered.

The plaintiff alleges than on the 16th of May, 1916, the defendant at the request of plaintiff's nephew, Francis Doucet, executed to the Hilliard Hotel Company, which was engaged in conducting hotels, a bond in the amount of $10,000 to indemnify it against loss arising from the defalcation or misconduct of Doucet while in its employ; that upon the execution of the bond Doucet entered the employ of the hotel company and thereafter and prior to the 23d of December, 1916, in violation of his trust appropriated to his own use moneys of the company which had come into his possession by virtue of his employment in an amount unknown to the plaintiff, and that upon complaint made by the hotel company to defendant, Doucet was taken into custody by an officer of the law, but without a warrant, and was discharged from his position and that the bond thereupon became automatically canceled and the defendant was released from any future liability thereon. It is further alleged that while

plaintiff's nephew was so in custody, and in consideration of a promise and agreement then and there made by the defendant through its vice-president not to cause his arrest and imprisonment pursuant to a warrant for the embezzlement or defalcation, plaintiff entered into an agreement in writing with the defendant, a copy of which is annexed to the complaint, and pursuant thereto deposited with the defendant securities of the value of $1,400; and that immediately upon the execution of said agreement plaintiff's nephew was permitted to go free. In making the agreement evidently a printed form was used for some of its provisions are quite general. It refers to the bond given by defendant and recites the deposit by the plaintiff with the defendant of the securities " as collateral security to protect the Surety against any and all liability or loss, cost, damage or expense on the bond described above, or any other bond or bonds, or the renewals or extensions of the same, executed for said Principal by the Surety, and also for the performance of the contract or contracts between the parties to· said bonds." By the agreement the plantiff authorized the defendant " to cash, sell, assign, transfer and deliver said collateral security or any other collateral security or any part thereof, without notice, at public auction or private sale at any time;" and reserved the right to substitute other collateral security acceptable to the surety, but he agreed to keep on deposit at all times collateral security acceptable to the surety of the value of not less than $1,400 " until complete performance of the condition of said bond or bonds and said contract or contracts, or any renewals or extensions thereof," and authorized the company to reimburse itself from the proceeds of the sale of the securities " for the payment of any claims, losses or expenses of any kind that the Surety may become liable for by reason of the execution of the said bond or bonds, or any renewal or extension thereof;" and to apply the proceeds of a sale of the securities to the payment of any premium due or to become due on any such bonds, renewals or extensions; and it recites that the deposit was made upon condition that upon the complete performance of the condition of the bond, renewals or extensions and full reimbursement to the company for any losses or expenses incurred, as well as the payment

of premiums it would return to the depositor the collateral security or any balance or proceeds thereof remaining in its hands, upon the return of the agreement and upon its being furnished with satisfactory evidence of the termination of all its liability. It is fair to assume that a printed form was used in making this agreement for the further reason that on the allegations of the complaint it was not contemplated that plaintiff's nephew was to continue longer in the employ of the hotel company, and it was not contemplated that any further liability would be incurred by the defendant, or that there was to be any renewal or extension of the bond, and, therefore, the defendant's sole purpose in accepting a deposit of securities was to indemnify it against the loss already incurred, the precise amount of which may not have been known at the time, but was understood to be about $1,400.

I am of the opinion that the complaint fails to state a cause of action for two reasons: *First,* because the facts alleged show that the contract was against public policy and, therefore, was illegal and void; and *second,* that the plaintiff voluntarily delivered the securities and parted with an interest therein to an extent necessary to indemnify the defendant, and, therefore, the agreement was fully executed on his part.

The plaintiff clearly alleges that he delivered the securities to the defendant in consideration of its agreement not to cause the arrest by warrant and imprisonment of his nephew for the embezzlement or defalcation. It is perfectly plain on these allegations that the plaintiff delivered the securities to defendant to prevent the prosecution of his nephew by the defendant for the felony of which, on the allegations of the complaint, the nephew was guilty and the first steps in the prosecution had already been taken, namely, by his arrest. It is a general rule and without any exception, I think, that such agreements are against public policy and that the court will refuse to extend its aid to either party thereto and will leave them where they have placed themselves. (*Haynes* v. *Rudd,* 83 N. Y. 251; 102 id. 372; *Buffalo Press Club* v. *Greene,* 86 Hun, 20.) There can be no doubt on these allegations that both parties were *in pari delicto.* Counsel for respondent contends that the illegality of the contract on this ground was not raised at Special Term and cannot

be availed of here, but in that he is likewise wrong, for the principle upon which the courts refuse aid in such circumstances has not been established for the benefit of the party sued to be availed of or not at his election but solely in the public interest.   Counsel for respondent relies on this point upon *Adams* v. *Irving Nat. Bank* (116 N. Y. 606).   That case dealt principally with a question of duress.   It was an action by a wife to recover money claimed to have been obtained from her by duress consisting of a threat to arrest her husband, and it was held that she might avoid the contract for duress whether the threatened arrest was legal or illegal.   It is stated in the opinion that defendant claimed on the appeal, but did not make the point on the trial, that the transaction constituted the compounding of a felony and that since the point was not suggested on the trial the question was not before the court on the appeal.   Since that decision, however, the question has been more pointedly presented in many cases, not cited by either counsel, and it has frequently been decided and is now the settled law of this jurisdiction that the objection may be taken at any time and without answer, as the duty with respect thereto devolves on the court in the interest of the public, and it is only necessary that the attention of the court be drawn to the fact that the contract contravenes the public policy of the State.   (See *Sprague* v. *Webb,* 168 App. Div. 292, 299; *Barry* v. *Mulhall,* 162 id. 749, 751; *Drake* v. *Lauer,* 93 id. 86; affd., 182 N. Y. 533; *Dunham* v. *Hastings Pavement Co.,* 56 App. Div. 244.)

But if the contract be not void as against public policy, I think the plaintiff cannot rescind the voluntary transfer and recover the securities or their value.   It is a well-settled rule, and is conceded by counsel for respondent, that a voluntary transfer or delivery of personal property is a gift thereof and cannot be rescinded for want of consideration. (*McKenzie* v. *Harrison,* 120 N. Y. 260, 265; *Seymour* v. *Seymour,* 28 App. Div. 495, 497; *Bedell* v. *Carll,* 33 N. Y. 581, 584; *Gray* v. *Barton,* 55 id. 68; *Ferry* v. *Stephens,* 66 id. 321; *Oregon Pacific R. R. Co.* v. *Forrest,* 128 id. 83, 90; *Jackson* v. *Nicol,* 23 App. Div. 139, 140; Bishop Cont. § 81; 14 Am. & Eng. Ency. of Law [2d ed.], 1009.)   But the learned counsel for respondent contends that this was not a gift of the securities and

that the plaintiff did not part with title thereto. The securities consisted of shares of capital stock of railroads. Title to such securities passes by delivery, and while it is recited in the agreement that they were delivered as collateral security it is manifest that plaintiff intended to part with all title and interest to the extent necessary to make good the defalcation of his nephew. The agreement was fully executed on his part. Nothing remained to be done under it excepting for the defendant to sell the securities and from the proceeds indemnify itself for the defalcation and account to the plaintiff for the surplus, if any. To the extent of the interest in these securities necessary to reimburse the defendant for the loss it has sustained there was a complete voluntary transfer of the securities.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the complaint dismissed, with costs.

CLARKE, P. J., SCOTT, DOWLING and SMITH, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, and the complaint dismissed.