MEEK *v.* WILSON.

1. CONTRACTS—CONSIDERATION—ORAL AGREEMENT TO GIVE SECOND
MORTGAGE AFTER HOME OWNERS' LOAN CORPORATION MORTGAGE—
RELEASES.

Agreement of land contract vendor to release purchasers there-
under and take bonds from the Home Owners' Loan Corpora-
tion, a third party, *held,* sufficient consideration for oral agree-
ment of purchasers to give a note and second mortgage after
mortgage was given to the corporation where release was mere-
ly intended to affect priority of obligations involved.

2. MORTGAGES—PURPOSE OF HOME OWNERS' LOAN ACT.

Purpose of the home owners' loan act was not to assist holders
of liens against property but to enable owners of homes to
save their homes from foreclosure by advancing, on first mort-
gages, sums to be used to pay off liens and to lighten the bur-
dens of the home owners, any benefit accruing to lien holders
being incidental (48 Stat. at L. chap. 64).

3. SAME—AGREEMENTS BY LIEN HOLDERS CONTRARY TO HOME
OWNERS' LOAN ACT.

An agreement exacted by a lien holder which tends to counteract
the relief of the home owner, sought by the home owners' loan
act, is contrary to the purpose of the act and to the regulations
adopted thereunder (48 Stat. at L. chap. 64).

4. SAME—JUNIOR LIENS—HOME OWNERS' LOAN CORPORATION REGU-
LATIONS.

Regulation of Home Owners' Loan Corporation barring second
mortgages on property on which it held a first mortgage if the
amount of the second mortgage exceeded difference between
its appraisals and amount of its first mortgage *held,* within
power of corporation to enact and binding upon junior lien
holders of property upon which corporation has a first mort-
gage (48 Stat. at L. chap. 64).

5. SAME—SECOND MORTGAGES IN EXCESSIVE AMOUNT UNENFORCE-
ABLE.

Note and second mortgage given by mortgagors on property on
which first mortgage had been given to Home Owners' Loan
Corporation in an amount in excess of difference between
amount of latter's first mortgage and appraisal *held*, contrary
to the home owners' loan act, contrary to public policy and
unenforceable where exacted by vendor upon release of pre-
viously-existing land contract (48 Stat. at L. chap. 64).

6. CONTRACTS—PUBLIC POLICY.

Contracts which tend to bring about results which the law seeks
to prevent are unenforceable.

7. APPEAL AND ERROR—QUESTIONS· REVIEWABLE—CONTRACTS—PUB-
LIC POLICY.

Question of public policy arising upon foreclosure of a second
mortgage on property in an amount in excess of that permitted
by regulations authorized by home owners' loan act con-
trolling mortgage indebtedness, argued by both parties in the
briefs and oral arguments, is considered by Supreme Court
where record is complete so that further testimony is not re-
quired for the determination of the question although question
was raised only inferentially in trial court (48 Stat. at L.
chap. 64).

8. MORTGAGES—FORECLOSURE OF VOID SECOND MORTGAGE—ACCOUNT-
ING BY JUNIOR LIENOR.

In suit to foreclose second mortgage, given in contravention of
public policy and hence unenforceable, mortgagee thereunder
*held*, entitled to credit for payments made on first mortgage,
taxes, repairs, insurance or any other lawful charges and sub-
ject to debit for payments made on second mortgage by mort-
gagors and with rents received, a lien on the property for any
excess of credits over debits being impressed in his favor sub-
ject to first mortgage and adverse balance being required to
be paid by him within a reasonable time.

9. COSTS—FAILURE TO RAISE DECISIVE QUESTION IN TRIAL COURT.

No costs are allowed defendant mortgagors on appeal from de-
cree of foreclosure of second mortgage notwithstanding second
mortgage is set aside as in contravention of public policy
where defendants failed to raise such question properly in the
trial court and thereby enable trial judge to have made his
determination with that issue in mind and possibly have ob-
viated necessity of an appeal.

Appeal from Wayne; Ferguson (Homer), J. Submitted January 14, 1938. (Docket No. 53, Calendar No. 39,828.) Decided April 4, 1938. Rehearing denied June 14, 1938.

Bill by Marcellus R. Meek, as assignee of Walter M. Meek, against Reginald Frank Wilson and Jessie Wilson to foreclose a second mortgage. Cross-bill by defendants against plaintiff to declare mortgage void, and for an injunction and other relief. Decree for plaintiff. Defendants appeal. Reversed and remanded.

*Angell, Turner, Dyer & Meek,* for plaintiff.

*Ralph S. Moore,* for defendants.

BUTZEL, J. Plaintiff brought suit to foreclose a second mortgage of $3,500 given by defendants to plaintiff's assignor on the 15th day of March, 1935. The mortgage covered property improved with a residence in Grosse Pointe Park, Wayne county, Michigan, which, in 1928, defendants had undertaken to purchase on land contract for the sum of $22,500 from the owner at that time. The contract was assigned to Walter Meek. In 1932, Meek and defendants entered into a new contract in place of the former one. Meek later assigned the new contract to plaintiff. The property was subject to a first mortgage running to the First National Bank of Detroit. Payments were made on the contract reducing the balance due to $17,888.50, but upon default being made in October, 1932, plaintiff began foreclosure proceedings in chancery. The case was dismissed because the defendants moved out of the premises and assigned the rents to the bank to apply on its first mortgage.

Subsequently, a first mortgage loan was sought from the Home Owners' Loan Corporation, organized and existing under the laws of the United States (home owners' loan act of 1933, approved June 13, 1933, 48 Stat. at L. chap. 64, p. 128, and amendments thereto; 12 USCA, § 1461 *et seq.*). The Home Owners' Loan Corporation for brevity is referred to herein as the H. O. L. C.

In March, 1935, the H. O. L. C. agreed to refinance the defendants' obligations but, prior thereto, there was considerable negotiation by defendants with plaintiff's assignor, and also with the H. O. L. C. The H. O. L. C. offered to loan to defendants on a first mortgage the sum of $9,105.07, of which $7,075 in bonds and a small amount in cash would be paid to the First National Bank to discharge its first mortgage, $475 in bonds and $25 in cash to plaintiff's assignor for his equity in the land contract, and the balance to be used to pay taxes and expenses. Plaintiff's assignor valued his equity in the property at approximately $7,700 and he notified defendants that he was unwilling to sacrifice that equity for $500, the amount offered by the H. O. L. C. On December 27, 1934, the H. O. L. C. gave notice to Mr. Meek that unless he called at the former's office within 48 hours, the application for the loan would be denied. Notice was sent to all parties on January 11, 1935, that the application had been denied. However, on January 16, 1935, defendants orally agreed to give plaintiff's assignor a second mortgage of $3,500 in addition to the $500 he was to receive from the H. O. L. C. Plaintiff's assignor thereupon signed and mailed to the H. O. L. C. a "vendor's consent to take bonds," in which he stated that he agreed "if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum

of $500 net, face value of the bonds of the Home Owners' Loan Corporation, to be adjusted with not exceeding $25 cash and thereupon to release all the claim of the undersigned against said property." The consent was dated December 19, 1934, but was not mailed until after the agreement to give a second mortgage had been reached between plaintiff's assignor and defendants. The H. O. L. C. reopened the application for the loan. In performance of his agreement, plaintiff's assignor executed a warranty deed of the premises to defendants, but delivered it to the H. O. L. C. Defendants then gave a first mortgage to the H. O. L. C. and on March 15, 1935, gave the note and second mortgage to plaintiff's assignor in accordance with the previous negotiations. The H. O. L. C. was not a party to the negotiations and did not know that plaintiff's assignor was exacting a second mortgage of $3,500 for the deed and release. Plaintiff's assignor received the bonds and cash allotted to him by the H. O. L. C.

Upon default in the payments on the second mortgage, plaintiff brought suit to foreclose. In their answer, defendants admitted the execution of the note and mortgage, but defended on the grounds of no consideration, fraud and release. They also filed a cross-bill, asking that the note and mortgage be declared void and that plaintiff be ordered to refund payments made thereon. The trial court awarded a decree to plaintiff.

The agreement to give a second mortgage was a condition precedent that the plaintiff's assignor exacted from defendants before he would accept payment from the H. O. L. C. and give defendants a deed to the property. Defendants so understood it. There was no misunderstanding between plaintiff's assignor and defendants, nor were there any fraudu-

lent misrepresentations to defendants. The court properly found that plaintiff was not guilty of any fraud on them.

Defendants claim on appeal that there was no consideration for the note secured by the second mortgage, since the original obligation of defendants was released in full by plaintiff's assignor. However, it is undisputed that the agreement to give a note and mortgage was reached before the release was sent to the H. O. L. C. The agreement of plaintiff's assignor to release the contract obligation and to take bonds from the H. O. L. C., a third party, was sufficient consideration for the oral agreement of defendants to give a note and second mortgage. While the release which was thereafter given purported to be a release in full of all claims against the property, the manifest intent of the parties was that the release should affect only the contract obligation and not the new agreement to give a note and second mortgage. It was understood by defendants that they were to give the second mortgage in consideration of plaintiff's assignor's concessions to them which made it possible for them to refinance the debts against the property through the H. O. L. C.

The real difficulty in the case, if the question is properly before us, is whether the note and second mortgage are not void because against public policy. As stated in the title of the original home owners' loan act, as enacted by congress, the purpose of the act was "to provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, to extend relief to the owners of homes occupied by them and who are unable to amortize their debt elsewhere." (See original act, Public— No. 43—73d Congress [H. R. 5240]).

Its purpose was not to assist holders of liens against the property, but to enable owners of homes to save their homes from foreclosure by advancing on first mortgages, sums to be used to pay off liens and to lighten the burdens of the home owners. Any benefit that might accrue to lien holders would be incidental. The H. O. L. C., in refinancing a home owner's obligations, sought to readjust them in accordance with his ability to make payments. The salutary effect of such a readjustment would be nullified if a lien holder were permitted, without regulation, to defeat the purpose of the home owners' loan act. An agreement exacted by a lien holder which tends to counteract the relief of the home owner sought by the act is contrary to the purpose of the act and to the regulations adopted thereunder.

The home owners' loan act provides for amortization of the loans by monthly or other periodic payments so arranged as to conform "with the situation of the home owner." Section 4 of the act states that the board may make such by-laws and regulations not inconsistent with the provisions of the act as may be necessary for the proper conduct of the affairs of the corporation. The board did adopt regulations which provided that the corporation would not refund any indebtedness where the home owner was called upon to pay more than he owed, or agreed "to cover any assumed loss on account of the acceptance of the bonds of the corporation by the mortgagee." It also provided that where the full amount of the indebtedness against the property could not be refunded by the corporation, the mortgagee or other lien holder would be permitted to take a second mortgage if the amount of the second mortgage did not exceed the difference between the

corporation's appraisals and the amount of the corporation's first mortgage, but in no event should the second mortgage be in terms which would cause the mortgagor's payments to be a hardship or deprive him of a reasonable opportunity to pay such mortgage.

The settlement report of the H. O. L. C. on defendants' application was introduced in evidence to show that the H. O. L. C.'s appraisal of the property was $11,400. Adding $3,500, the amount of plaintiff's mortgage, to $9,105.07, the amount of the H. O. L. C. mortgage, would bring the total amount of the two mortgages to $12,605.07, which is over $1,200 in excess of the appraisal. This was distinctly forbidden by the regulations. Plaintiff asserts with some justification that it would have been very simple for the H. O. L. C. to exact a statement in the application or consent that the mortgagee was not receiving more than the H. O. L. C. payment. He further contends that it is not equitable to make him subject to rules and regulations not set forth in the act. While the rules and regulations are not widely publicized by the various governmental agencies, nevertheless the law does provide for such rules and regulations. In *Kay* v. *United States,* 303 U. S. 1 (58 Sup. Ct. 468) handed down by the United States Supreme Court January 31, 1938, the court said, in referring to another section of the home owners' loan act, that:

"The resolution adopted by the board of directors sets forth the nature of the ordinary charges that 'are authorized and required;' and the power of Congress to provide for such action by the board is not open to question."

In *Cook* v. *Donner,* 145 Kan. 674 (66 Pac. [2d] 587, 110 A. L. R. 244), where the facts were similar to

those of the instant case, the court said that the regulations of the H. O. L. C. were law and were to be followed by the court. There is no claim that the regulations were kept secret nor that they are unreasonable and not in conformity with the purpose or wording of the act. While plaintiff claims that the H. O. L. C. had knowledge that he was negotiating with defendants, there is no showing that the H. O. L. C. definitely knew that defendants proposed to give the second mortgage. Had the mortgage been given with the knowledge of the H. O. L. C. it could have insisted upon the provisions of the law being followed. The case differs entirely from *Bay City Bank* v. *White, ante,* 267.

Since the exacting of the second mortgage was contrary to the purpose of the act and to the regulations, it is contrary to public policy and unenforceable. *Cook* v. *Donner, supra; First Citizens Bank & Trust Co. of Utica* v. *Speaker,* 159 Misc. 427 (287 N. Y. Supp. 831), aff'd 250 App. Div. 824 (294 N. Y. Supp. 737); *Jessewich* v. *Abbene,* 154 Misc. 768 (277 N. Y. Supp. 599); *Chaves County Building & Loan Ass'n* v. *Hodges,* 40 N. M. 326 (59 Pac. [2d] 671). In *U. S.* v. *Kreidler,* 11 Fed. Supp. 402, the court stated that a creditor who signs a consent releasing all the indebtedness, while at the same time he is exacting an agreement to give a note and second mortgage for the difference between the market value and par value of the bonds to be received, is guilty of a violation of the act. While the facts in that case differ from those in the instant case, the same principles apply. Plaintiff did not attempt to mislead defendants in any way, nor affirmatively to conceal the transaction from the H. O. L. C., but the contract had a tendency to defeat the purpose of the act and is unenforceable on that account.

"The vice is in the very nature of the contract, and it is condemned as belonging to a class which the law will not tolerate." *Richardson* v. *Crandall,* 48 N. Y. 348, 362.

Contracts which tend to bring about results which the law seeks to prevent are unenforceable. *Sage* v. *Hampe,* 235 U. S. 99 (35 Sup. Ct. 94).

Plaintiff contends strenuously that the question of public policy is not properly before this court because it was not raised in the court below, nor in the grounds of appeal in the record. Defendants' pleadings allege only that the mortgage was released, was without consideration, and was obtained by fraud, misrepresentations and for the purpose of defeating the rights of defendants. The question of public policy was only inferentially raised at the hearing before the trial court. The trial judge asked an attorney for the H. O. L. C., who appeared as a witness, whether he could point out anything in the transaction that was illegal. The latter stated that he had read the act several times and that it was not very definite. The question of public policy was raised, however, in the briefs in this court and in the oral argument. It is questioned whether, under previous decisions, a claim that a contract is void because it is against public policy can be raised for the first time in this court when it was raised neither in the pleadings nor at the hearing in the court below. In *Lee* v. *U. S. Graphite Co.,* 161 Mich. 157, we held that a party cannot claim for the first time in the Supreme Court that a contract is void because in restraint of trade. In *Boston Piano & Music Co.* v. *Pontiac Clothing Co.,* 199 Mich. 141, we held that the court exercises appellate jurisdiction, must dispose of cases submitted to it on the record as made, and cannot consider the question of the illegality of a

contract if not raised below. In *American Cedar &*
*Lumber Co.* v. *Gustin,* 236 Mich. 351, a suit for an
accounting and cross-bill to quiet title, we refused
to consider the question of unenforceability of a land
contract arising from the nonpayment of specific
taxes, when not raised in the court below.

On the other hand, several cases have held that the
defense of illegality need not be pleaded, since it is
the duty of the court to take notice of illegality *sua*
*sponte.* *Heffron* v. *Daly,* 133 Mich. 613; *Fisher* v.
*Hampton Transportation Co.,* 136 Mich. 218 (112
Am. St. Rep. 358); *Swing* v. *Cameron,* 145 Mich.
175 (9 L. R. A. [N. S.] 417, 9 Ann. Cas. 332). In
*Richardson* v. *Buhl,* 77 Mich. 632 (6 L. R. A. 457),
it was held that it was not necessary that the parties
should rely on the fact that the contract is one which
it is against the policy of the law to enforce. The
court will take notice of illegal contracts on its own
motion and refuse to enforce them.

In the instant case, the record is complete so that
the taking of further testimony is not required for
the determination of the question of public policy.
In *Auditor General* v. *Bolt,* 147 Mich. 283, where the
record contained all of the facts necessary to the
determination of a question raised by this court, it
was considered though not raised or passed upon in
the court below. Likewise in the more recent case
of *Thomas* v. *Morton Salt Co.,* 258 Mich. 231, we held
that the question of estoppel to deny the constitu-
tionality of an act could be considered for the first
time in this court although not formally pleaded; the
question, however, being raised by this court to avoid
conflict with previous decisions.

Section 13537, 3 Comp. Laws 1929, provides that
after the argument of any case or when the same
is submitted on briefs, if the court is of the opinion

that a certain point or legal proposition is involved which is material to the decision of the case, but which has not been raised by counsel, the case shall not be decided upon such point or proposition until both counsel have had an opportunity to argue the same before the court. The question of public policy arising in the instant case was argued by both parties in the briefs and oral arguments.

It would be anomalous, indeed, if this court were required to enforce a contract which the record discloses to be against public policy and in contravention of the purposes and provisions of a statute. The rule that a contract against public policy is unenforceable is for the protection of the public at large, and this protection should not be lost because of the lack of diligence of a party to the suit. Such is the rule in many jurisdictions. *Struthers* v. *Peckham,* 22 R. I. 8 (45 Atl. 742); *Crichfield* v. *Bermudez Asphalt Paving Co.,* 174 Ill. 466 (51 N. E. 552, 42 L. R. A. 347); *Claflin* v. *U. S. Credit System Co.,* 165 Mass. 501 (43 N. E. 293, 52 Am. St. Rep. 528); *Massachusetts National Bank* v. *Shinn,* 163 N. Y. 360 (57 N. E. 611); *Doucet* v. *Massachusetts Bonding & Ins. Co.,* 180 App. Div. 599 (167 N. Y. Supp. 892); *Ellis* v. *Frawley,* 165 Wis. 381 (161 N. W. 364); *Clark* v. *Utah Construction Co.,* 51 Idaho, 587 (8 Pac. [2d] 454); *Cullison* v. *Downing,* 42 Ore. 377 (71 Pac. 70); *Horsley* v. *Woodley,* 12 Ga. App. 456 (78 S. E. 260).

The second mortgage and note, having been given in contravention of public policy, should be set aside. Plaintiff, who has made payments on the first mortgage to the H. O. L. C. after defendants' default, should be credited with such payments and with any sums expended for taxes, repairs, insurance or any other lawful charges and should be debited with payments made on the second mortgage by defend-

ants and with any rents that he has received from the property. If the credits exceed the debits, he shall have a lien on the property, subject to the first mortgage, for any balance due him. If, however, he has received more than the amounts paid out by him, he shall pay the difference to defendants within a reasonable time.

As defendants failed to·raise the question of public policy properly in the lower court, so that the trial judge could have made his determination with that issue in mind, and thus possibly have obviated the necessity of an appeal, no costs will be allowed to either party.

The case will be remanded to the lower court to ascertain the additional facts necessary for a decree and to enter one in accordance with this opinion.

BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred with BUTZEL, J.

WIEST, C. J. (*concurring*). Participation by plaintiff, enabling defendants to obtain the relief afforded by the H. O. L. C., disabled plaintiff from lessening the beneficial purposes thereof; not by the rule of estoppel between private parties, but by the inhibition of public policy.