## Cicchini et ux. v. Maioriello

*Benjamin H. Levintow*, for plaintiffs.
*Joseph Singer*, for defendant.

SLOANE, J., May 18, 1939. — Plaintiffs, husband and wife, seek, by this bill in equity, to cancel a bond and mort-

gage, secured against premises owned by the husband. They allege that, because they could not read or write English, they did not know what they signed or executed, and were imposed upon by defendant's husband, since, they allege, they owe nothing to defendant or her husband, and therefore had no reason to execute the bond and its accompanying mortgage.

Defendant answered and said that the bond and its associated instrument, the mortgage, were given by plaintiffs to defendant, as nominee of her husband, for a valid consideration—an accumulation of past loans. One issue is self-evident:

(a) Shall the bond and mortgage be canceled because of the advantage taken by defendant's husband of the illiteracy of plaintiffs?

The other issue not raised by the pleadings but brought forth at the hearing is:

(b) Are the bond and mortgage, in fact, a deception practiced upon the Home Owners' Loan Corporation, and if so, can such deception be brought forth for consideration, and in support of the compulsory satisfaction of the mortgage, since such deception was not set out in the pleadings?

The hearing was held on March 3, 1939, and we allowed evidence on both issues.

From a consideration of the pleadings and evidence we make the following

### Findings of fact

1. Plaintiff Alfredo Cicchini has been the owner of premises known as and numbered 1628 South Nineteenth Street, Philadelphia, Pa., since May 5, 1923.

2. At the time of the conveyance of the premises to plaintiff, a first mortgage on the premises was created in favor of Mrs. Pauline M. Kelly, in the face or principal amount of $2,500. The principal amount was reduced by periodic payments.

3. (*a*) On February 28, 1930, plaintiff Alfredo Cicchini gave to the Stars and Stripes Building & Loan Association a second mortgage on the premises in the principal sum of $1,150.

(*b*) Afterwards this mortgage became the property of the Reserve Building & Loan Association by reason of a merger of these two building and loan associations.

(*c*) In February of 1932, this second mortgage was assigned to Joseph Maioriello, husband of defendant, in exchange for certain monies then owing to Joseph Maioriello by the Reserve Building & Loan Association.

4. During the ensuing three years plaintiffs made frequent small payments to Joseph Maioriello under the terms of this second mortgage.

5. (*a*) Early in 1934 plaintiffs, distressed and needing financial relief, sought to obtain a loan from the Home Owners' Loan Corporation and made application to the corporation for such a loan.

(*b*) On April 27, 1934, and again on May 7, 1935, Joseph Maioriello signed agreements entitled "Mortgagee's Consent to Take Bonds", under which he voluntarily consented and agreed to accept $100 principal amount of H. O. L. C. bonds and a small sum of cash in full settlement of the amount due him as assignee mortgagee (which he represented to Home Owners' Loan Corporation to be $1,170), and, upon receipt of the bonds and cash, to satisfy his mortgage and cancel plaintiffs' bond.

(*c*) Pursuant to this agreement, on July 28, 1935, Joseph Maioriello duly and voluntarily satisfied of record the said second mortgage of which he was assignee, having received $100 principal amount of H. O. L. C. bonds.

6. (*a*) On July 8, 1935, settlement was made with the Home Owners' Loan Corporation and a first mortgage on the said premises was given to that corporation in the principal sum of $2,240 to secure the loan given by that corporation to plaintiffs in relief of their financial dis-

tress. The mortgage held by Mrs. Pauline M. Kelly thereupon became a second lien.

(b) A material inducement to Home Owners' Loan Corporation to give plaintiffs its loan was the agreement of Joseph Maioriello to satisfy his mortgage, as assignee, for H. O. L. C. bonds in the principal amount of $100.

7. (a) On or about August 1, 1935, plaintiffs executed a mortgage on the said premises, together with bond and warrant, in favor of Antoinette Maioriello, wife of Joseph Maioriello, in the principal sum of $1,100, payable three years from the date thereof.

(b) This bond and mortgage were executed by plaintiffs with full knowledge of the nature of the instruments which they were signing.

(c) The bond and mortgage were executed without the knowledge or consent of any agent of the Home Owners' Loan Corporation, but on the contrary, deliberately, without the knowledge or consent of that corporation, and with intent that it should take the place of the mortgage on the premises which Joseph Maioriello had agreed with the Home Owners' Loan Corporation to satisfy of record. Both parties, plaintiffs and Joseph Maioriello, intended thereby to overcome the satisfaction of the mortgage held by Joseph Maioriello, as assignee.

(d) The said bond and mortgage of August 1, 1935, constituted a violation of the rules and regulations of the Home Owners' Loan Corporation, made pursuant to the Home Owners' Loan Act of June 13, 1933, 48 Stat. at L. 128, 12 U. S. C. §1461, creating the Home Owners' Loan Corporation.

(e) The said mortgage, though executed and delivered on or about August 1, 1935, was not recorded until September 15, 1937.

8. (a) Shortly after this recording, plaintiffs, desiring to obtain money in order to remove the junior mortgage lien of Mrs. Pauline M. Kelly, then in the principal amount of $560, sought a loan from a bank.

(*b*) Plaintiff Alfredo Cicchini requested Joseph Maioriello to have satisfied of record his third mortgage dated August 1, 1935 (held in defendant's name, his wife) and promised that plaintiffs would execute another mortgage to take the place of the one so satisfied, to defendant, as mortgagee. Their oral understanding was that this proposed substituted mortgage was not to be recorded until after the recording of the second mortgage lien the bank would take to secure its loan to plaintiffs.

(*c*) In accordance with this request, defendant, on her husband's behalf, satisfied of record the mortgage dated August 1, 1935 (on December 3, 1937), and on November 30, 1937, plaintiffs executed a new bond with accompanying mortgage in favor of defendant in the principal sum of $1,100. These instruments were signed by plaintiffs with full knowledge of their nature and purport.

(*d*) Plaintiffs did not obtain the loan from a bank to purchase Mrs. Kelly's mortgage. On May 10, 1938, this mortgage was assigned by Mrs. Kelly to C. Baher Palmer, which assignment was recorded on July 25, 1938. On July 22, 1938, this mortgage was assigned to Frank Cozzo, plaintiff's son-in-law.

(*e*) When Joseph Maioriello learned that Frank Cozzo had agreed to purchase the said second mortgage, he realized that he need delay no longer in recording his wife's third mortgage, dated November 30, 1937. Accordingly, on July 11, 1938, he caused this mortgage to be recorded. Shortly thereafter this suit was instituted for the concellation of the said third mortgage, dated November 30, 1937.

9. Defendant had nothing to do with plaintiffs or either of them. She was simply nominee of her husband in the mortgages given by plaintiffs, because of their transactions with defendant's husband.

10. Plaintiffs, though not tutored or learned in our tongue, were fully aware of what they did in executing the various instruments herein concerned.

## Discussion

We do not believe either of the parties to this case. (We, of course, do not refer to defendant. So far as the case goes, and as for the transactions between plaintiffs and her husband, she is simply a figurehead, her husband's channel of ownership). Plaintiffs are not educated or learned, but they knew what they were about, especially the husband. They knew they were executing bonds and mortgages. Plaintiff-husband impressed me as an individual who would sign nothing unless he knew the content and import of the instrument requiring his subscription. If the case depended on that issue—imposition on plaintiffs because of illiteracy—we would decide adversely to plaintiffs.

But that is not the situation here, despite plaintiffs' allegations and averments. We believe that both parties, by the bond and mortgage, intended to overcome and maneuver around the requirements and settled purpose of the Home Owners' Loan Corporation—to relieve distressed home dwellers, often with the help and voluntary consent of existing mortgagees.

Despite the maze of complications and of conflicting and contradictory testimony that has characterized this case, the basic facts upon which our decision must rest are comparatively simple. Plaintiffs wished to obtain a loan from the Home Owners Loan Corporation. The corporation agreed to extend the loan, provided plaintiffs would comply with the rules and regulations of the corporation by procuring a "Mortgagee's Consent to Take Bonds of the Home Owners' Loan Corporation" in satisfaction of his mortgage. Such an agreement was signed by Joseph Maioriello, the mortgagee, and it expressly set forth that the mortgagee would thereafter require no further mortgage or other evidence of the

indebtedness from the mortgagor, Alfredo Cicchini. In fact, Maioriello agreed to satisfy his mortgage for H. O. L. C. bonds and a little cash and to cancel the bond. He did satisfy the mortgage. Despite this agreement, and its complete execution, the parties secretly executed a new mortgage, plainly intended to afford Joseph Maioriello security for the obligation of the old mortgage. (The mere fact that his wife, to whom plaintiffs admittedly owed nothing, was named as mortgagee and obligee has no bearing upon the significance of the transaction). The mortgage was executed before the completion of the transaction with the Home Owners' Loan Corporation, but it was not recorded until over two years after the corporation had granted plaintiffs' loan. The whole transaction was obviously designed to deceive the Home Owners' Loan Corporation by procuring from it a loan without actually complying with the terms provided by its rules and regulations. There can be no doubt but that the consent agreement, which the parties later secretly violated, was a material factor, inducing the corporation to make the loan.

And so it arises, that under this set of facts, the basic issues in this case are: First, do the foregoing facts warrant the exercise of the equitable power of cancellation? Second, assuming that they do, can those facts be considered under the pleadings in the present case?

1. Since the establishment in 1933 of the Home Owners' Loan Corporation (under the Home Owners' Loan Act, supra), it has been repeatedly held that judgments or mortgages secretly procured in the manner employed in the present case are void and unenforcible. It is so in other jurisdictions: Federal Land Bank of Columbia et al. v. Blackshear Bank et al., 182 Ga. 657 (1936) ; Cook et ux. v. Donner et ux., 145 Kans. 674 (1937) ; Meek v. Wilson, 283 Mich. 679 (1938) ; Stager v. Junker et al., 14 N. J. Misc. 913 (Sup. Ct. 1936) ; Federal Land Bank of St. Paul et al. v. Koslofsky et al., 67 N. D. 322 (1937) ; see 110 A. L. R. 250 (1937) ; and it is so in our own

State: Anderson v. Horst et ux., 132 Pa. Superior Ct. 140 (1938), and cases cited at page 146. Courts everywhere, with a unanimity of determination to uphold and strengthen efforts directed toward the public weal, have with but one exception refused to enforce such judgments or mortgages at the suit of judgment creditors or mortgagees.

"We think the opinion of the Supreme Court of New Jersey in *Stager v. Junker*, supra, expresses the principle very clearly. 'The Home Owners' Loan Act (48 Stat. 128 [see 12 U. S. C. A. sec. 1461 et seq.]) was intended to provide emergency relief with respect to home mortgage indebtedness, and the rules of the corporation provide that no loan will be made where there was a separate understanding or agreement between the debtor and the holder of the mortgage calling for any payments other than those required by the corporation. The plaintiff, in order to facilitate the loan, stated the full extent of his debt and agreed to accept a definite number of bonds at face value in full settlement thereof. He was then precluded from exacting any further or other agreement from his debtor looking to the payment of the additional sum. The mere fact that he exacted the instrument in suit, while the negotiations were pending and after he had agreed to accept a definite number of bonds in full settlement, denotes bad faith toward the lending agency. When he agreed to an acceptance of each reduction of bond interest, the acceptance related back to the first agreement and was a reiteration of the promise there made to accept the bonds agreed upon in full settlement of the defendants' obligation in accordance with the rules of the lending corporation deemed necessary to rehabilitate the home owner. By means of the secret agreement the plaintiff could not defeat the express terms of his own agreement to accept the bonds of the lending agency in full settlement of the defendants' obligation' ": Anderson v. Horst et ux., supra, pp. 146, 147.

And it makes no difference that the party seeking cancellation is himself tainted with the bad faith toward the Home Owners' Loan Corporation. If there has been imposition, there ought to be relief, not for the parties' sake but because of the innocent public agency. In fact, we do not see how the imposition could take place without the maneuvering of both parties—the owner and the mortgagee. Generally, the court will not act for either party to an illegal contract and will leave both parties where it finds them, but if inaction harms an innocent body who ought to be protected, the courts will act, and enforce or rescind, as the case warrants.

"It is true that this is the usual rule with regard to illegal transactions [that the courts will leave parties to an illegal agreement where it finds them], as President Judge Keller points out in Anderson v. Horst et ux., supra, at page 145. But there is an exception which is set forth in section 601 of the A. L. I. Restatement of Contracts, p. 1116, as follows:

" 'If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or recission, whichever is appropriate, is allowed.'

"This principle is well settled. See 1 and 2 Pomeroy's Equity Jurisprudence (4th ed.) secs. 403, 940-41. I think it applies to this situation": Masci et ux. v. Moose B. & L. Assn., 33 D. & C. 458, 461 (1938). On that ample basis, cancellation ought to be decreed.

2. But we face another problem. May we consider the fact of deception practiced on the Home Owners' Loan Corporation when it is not the basis or theory of plaintiffs' bill and was not raised or set forth in the pleadings? We allowed testimony on that score (over objection) but neither plaintiffs' bill nor defendant's answer contains any allegation referring to this fraudulent transaction by which the H. O. L. C. loan was procured. It might therefore be maintained that, since objection was made

at the hearing to the admission of evidence as to this transaction, we may not take it into consideration in reaching our conclusion on the case. Generally, everybody is narrowed to issues raised by pleadings. Generally, a court of equity is not permitted to go outside of pleadings, and it has been held that proof of matters not alleged does not afford a basis for equitable relief: Zook v. Pennsylvania R. R. Co., 206 Pa. 603 (1903) ; Edwards et al. v. Brightly, 9 Sadler 332 (1888) ; Miller v. Piatt, 33 Pa. Superior Ct. 547 (1907) ; Goslin, Admr., v. Edmunds, 325 Pa. 154 (1937).

Yet it is well settled both in this State and in other jurisdictions that where illegality or facts which raise a question of public policy appear in the testimony, it is the duty of the court, sua sponte, to take notice of those facts and to grant the appropriate relief: Waychoff et al. v. Waychoff, 309 Pa. 300, 308 (1932) ; New York & Pa. Co. v. Cunard Coal Co., 286 Pa. 72, 81 (1926) ; W. S. Weed & Co. v. Cuming, 12 Pa. Superior Ct. 412, 417, aff'd in 198 Pa. 442 (1900). See also Struthers v. Peckham, 22 R. I. 8, (1900), Crichfield et al. v. The Bermudez Asphalt Paving Co., 174, Ill. 466 (1898), Claflin et al. v. United States Credit System Co., 165 Mass. 501 (1896), Doucet v. Massachusetts Bonding & Insurance Co., 180 App. Div. 599 (N. Y. 1917), and Horsley v. Woodley, 12 Ga. App. 456 (1913).

In Meek v. Wilson, 283 Mich. 679 (1938), the same sort of illegality with which we are here concerned was under consideration. The question of public policy had not been raised by the pleadings, *and it had been only inferentially raised at the trial.* In deciding that this question could be raised *for the first time even in the appellate court,* the court said (p. 690) :

"It would be anomalous indeed, if this court were required to enforce a contract which the record discloses to be against public policy and in contravention of the purposes and provisions of a statute. [The court is here referring to the Act of 1933, supra, which created the Home

Owners' Loan Corporation.] The rule that a contract against public policy is unenforceable is for the protection of the public at large, and this protection should not be lost because of the lack of diligence of a party to the suit. Such is the rule in many jurisdictions."

While the present case involves more than simply the refusal of a court to enforce a contract because it appears to be in violation of public policy, the duty of the court to root out illegality wherever it appears and to counteract it by proper judicial action, upon its own motion, is just as strongly present. As Judge Flood stated in the Masci case, supra, at page 462, ". . . here petitioner is seeking to cancel of record an unenforceable obligation and if we were to refuse his prayer, the corporation could next week obtain from us the very action which we would now refuse to petitioner." The mere fact that plaintiff has failed to make proper allegations in his bill should have no bearing upon our specific duty to grant a measure of relief designed solely for the protection of the Home Owners' Loan Corporation, a public agency for the public good. That plaintiffs will be benefited by such relief is perhaps regrettable, but entirely immaterial. Their failure to have averred the facts upon which our action is based is of no importance.

Accordingly we come to the following

### Conclusions of law

1. Joseph Maioriello agreed to accept the sum of $100 in bonds (and a small sum of cash) of the Home Owners' Loan Corporation in full settlement of his mortgage claim against plaintiff Alfredo Cicchini, and upon receipt of said bonds (and cash) he agreed to release his entire claim against plaintiffs or the mortgaged property.

2. Joseph Maioriello, without the knowledge or consent of the Home Owners' Loan Corporation and in contravention of chapter 6, sec. 4-d(1) of the rules and regulations of the said Home Owners' Loan Corporation, adopted under the authority of the Home Owners' Loan

Act of June 13, 1933, 48 Stat. at L. 128, sec. 4(*k*), obtained from plaintiffs (in his wife's name) a certain mortgage in the sum of $1,100 dated August 1, 1935, recorded on September 15, 1937.

3. Such act was contrary to the purpose of the Home Owners' Loan Corporation Act and to the regulations adopted thereunder, and the mortgage is therefore unenforcible and void, upon sound considerations of public policy.

4. The third mortgage dated November 30, 1937, executed by Alfredo Cicchini and Mary Cicchini to Antoinette Maioriello in the sum of $1,100, recorded in the Office for the Recording of Deeds at Philadelphia in Mortgage Book D. W. H. no. 249, page 233, was merely a renewal of the aforesaid void and unenforcible mortgage dated August 1, 1935, and is likewise unenforcible and void. It should be set aside and satisfied of record.

5. The fact that plaintiffs have failed to include in their bill in equity averments sufficient to show that the aforesaid mortgages were and are unenforcible and void on ground of public policy does not prevent the chancellor, under the circumstances, from ordering the cancellation and satisfaction of record of the said mortgage dated November 30, 1937.

### Decree nisi

And now, May 18, 1939, upon consideration of the foregoing case, it is ordered, adjudged, and decreed:

1. That the mortgage covering the premises 1628 South Nineteenth Street, Philadelphia, Pa., more fully described therein, conditioned upon the payment of $1,100, executed by Alfredo Cicchini and Mary Cicchini to Antoinette Maioriello on November 30, 1937, and recorded in the Office for the Recording of Deeds in Mortgage Book D. W. H. no. 249, page 233, is unenforcible and void, and defendant is directed to satisfy it of record.

2. That defendant is directed forthwith to mark "Cancelled and Satisfied" upon the bond and warrant of at-

torney accompanied by the mortgage hereinabove described, and to turn over the said instrument, so marked, to plaintiffs, Alfredo Cicchini and Mary Cicchini, or either of them.

3. Costs shall be paid equally by plaintiffs and defendant.

The prothonotary shall enter this decree nisi and give notice thereof to the parties or their counsel of record.