### SCHRAM v. WELTON et ux.
### No. 617.

District Court, E. D. Michigan, S. D.
Oct. 29, 1940.

Robert S. Marx and Norman P. Burau, both of Detroit, Mich., for plaintiff.

John Hal Engel, of Detroit, Mich., for defendants.

PICARD, District Judge.

Defendants were indebted to plaintiff on two notes secured by two mortgages covering property at 2205 Collingwood Avenue, Detroit, Michigan. The amount due on the first mortgage was $6,796.67. The amount due on the second mortgage is not shown, but some time in January, 1935, plaintiff, through the HOLC, accepted $3,815. Plaintiff discharged both mortgages, but at the same time exacted a letter to the effect that defendants agreed that their liability formerly secured by the second mortgage would not be affected by release of the second mortgage. Both discharges, as recorded, show "payment in full", but the consent form demanded by HOLC and signed by plaintiff pertaining to the second mortgage had the words, "In full settlement of the claim of the undersigned", eliminated by a red ink line. The representative of the HOLC testified that these were the usual forms, although he could not remember this one in particular. As a witness he intimated that he must have had in mind that defendants were going to pay the note in question here, which with interest now amounts to $739.07, and so confirmed the settlement. But his testimony was not unequivocable.

Plaintiff seeks judgment against Phillip E. Welton, husband, individually, and against Welton and his wife jointly and gives five reasons: 1. That defendants are bound by their written agreement; 2. that the HOLC acquiesced and agreed that plaintiff might retain the second mortgage note; 3. that the note sued upon, plus the amount of the mortgage granted by the HOLC, does not exceed the appraisal placed upon the property by the HOLC; 4. that plaintiff never agreed to cancel and discharge the second mortgage note of defendants; and 5. that even if the court holds that plaintiff impliedly agreed to cancel and discharge the note sued upon, there is no consideration for such an agreement.

On the other hand, defendants contend that compelling them to permit the second mortgage note to still be in existence upon which suit might be started at once, without provision made for small payments, is contrary to the spirit of the HOLC act, 12 U.S.C.A. § 1461 et seq., the regulations which provide for a second mortgage (but makes no provision for a naked indebtedness such as this) contrary to public policy, illegal, and that the wording of the discharge of both mortgages executed by plaintiff, shows the notes for which they were given, have been "fully, paid, satisfied and discharged."

## Conclusions of Law.

In order to make a fair and equitable decision in this case we must consider the purpose of the HOLC act and this is described we believe very satisfactorily in Jessewich v. Abbene, 154 Misc. 768, 277 N.Y.S. 599, 601, as follows: "To save homes from threatened or pending foreclosures, to save lifetime savings investments of home owners in distress, to save them from becoming paupers, and is the rehabilitating agency to guard and protect the small home owner by judiciously refinancing his obligations with enough to pay all the encumbrances on his home, but limiting the new mortgage to 80 per cent. of its appraisal value for the property, so he can meet his amortized mortgage by monthly payments on principal with interest."

This language is cited with approval in Bay City Bank v. White, 283 Mich. 267, 277 N.W. 888. The facts in the Bay City Bank case, however, are not similar to the case at bar. There the mortgage on defendant's home had been foreclosed and the period of redemption had expired. The bank, owning the property completely, made a new deal with defendants through HOLC refinancing and in addition to the HOLC mortgage, defendants gave a note secured by incumbrance upon certain personal property owned by defendants. The evidence was conclusive that it was specifically shown that the dual financing responsibility had been satisfactorily anticipated by all parties, first for the loan from the HOLC there was the mortgage, and for the second, other arrangements known to HOLC, accepted and approved by it and also by the mortgagors. The court recognized the distinction and so expressed itself on page 274, of 283 Mich., on page 890 of 277 N.W.:

"We are of the opinion that there are several phases of the instant case which are of particular importance. First, that at the time the H.O.L.C. loan was solicited the period of redemption after foreclosure had fully expired and the plaintiff was the absolute owner of the property upon which the H.O.L.C. loan was sought. The real transaction was a purchase of the property by the defendants from the plaintiff. Further, the obligation which

plaintiff now seeks to enforce in no way constituted a lien upon the property covered by the H.O.L.C. mortgage. Instead it was a bill of sale or chattel mortgage covering personal property of defendants which was in no way related to nor used in connection with the real estate on which the Home Owners' Loan Corporation took security."

Another case cited by the parties is that of Meek v. Wilson et al., 283 Mich. 679, on page 683, 278 N.W. 731, on page 734, where the mortgagors gave plaintiff a second mortgage securing payment of that portion of the loss which plaintiff sustained through acceptance of HOLC bonds and this type of arrangement was approved by the court, where it states: "The Home Owners' Loan Act provides for amortization of the loans by monthly or other periodic payments so arranged as to conform 'with the situation of the home owner.' Section 4 of the act, as amended, 12 U.S.C.A. § 1463, states that the board may make such bylaws and regulations not inconsistent with the provisions of the act as may be necessary for the proper conduct of the affairs of the corporation. The board did adopt regulations which provided that the corporation would not refund any indebtedness where the home owner was called upon to pay more than he owed, or agreed 'to cover any assumed loss on account of the acceptance of the bonds of the corporation by the mortgagee.' It also provided that, ·where the full amount of the indebtedness against the property could not be refunded by the corporation, the mortgagee or other lienholder would be permitted to take a second mortgage if the amount of the second mortgage did not exceed the· difference between the corporation's appraisals and the amount of the corporation's first mortgage, but in no event should the second mortgage be in terms which would cause the mortgagor's payments to be a hardship or deprive him of a reasonable opportunity to pay such mortgage."

However, in the Meek case the court, although approving the "type of arrangement", did not in the final analysis sustain the bank's mortgage because the amount of the two mortgages did exceed the HOLC appraisal.

Defendants claim also that there is the further distinction between the two cases since in the Meek case an entirely new instrument was drafted which permitted amortization of the second mortgage over a period of time, while in the present case, no new instrument was drawn and defendants were required to sign an agreement that not only provided that their over-due paper would not be affected, but likewise permitted the bank to take immediate action on that note if it so desired. This they said might cause the mortgagors hardship and deprive them of a reasonable opportunity to pay their indebtedness. They quote the following from the Meek case as conclusive on this point: "An agreement exacted by a lienholder which tends to counteract the relief of the home owner sought by the Home Owners' Loan Act is invalid as contrary to the purpose of the act and regulations adopted thereunder."

It might also be argued that both the Bay City Bank v. White and Meek v. Wilson cases hinge upon whether there has been any fraudulent misrepresentation or misunderstanding between the parties and that where there is no fraud, secrecy or collusion an agreement of this kind can be resorted to by the mortgagee to protect its interest. However there was no fraud, misrepresentation or misunderstanding in Meek v. Wilson, supra, and it is admitted that there is no fraud, collusion or secrecy·in the case at bar. We also believe that if plaintiff had insisted upon a second mortgage, conforming to the HOLC regulation, which had been approved by it, there could be no question of its right to recover. But the representative of the HOLC had no direct recollection of this particular case. His testimony was more to the effect that this was some times done, and keeping in mind the words of the Supreme Court of the State of Michigan "but in no event should the second mortgage be in terms which would cause the mortgagor's payments to be a hardship or deprive him of a reasonable opportunity to pay such mortgage," and since no arrangement was made to afford defendants an opportunity to pay the note sued upon over a period of time, we find ourselves outside the regulation of the HOLC, which permits, in some exceptional instances, an agreement to cover "any assumed loss". In the Meek case the Supreme Court of the State of Michigan didn't even cut down the size of the second mortgage to the permitted amount. It showed its disapproval of these agreements to cover "any assumed loss" by declaring the whole mortgage void, evidently fearful that if it put its

stamp of approval upon any exception to HOLC regulations, it opened the door to other agreements entered into by the parties. In many instances this could place the home owner in the position where legal sanction would be given to arrangements which in truth and fact were made under duress and coercion. Thus the very purpose of the HOLC act would be defeated.

We can't concur that the HOLC act anticipates that the debtors be given advantage of a settlement provided by that act only to be met by added subterranean conditions that destroy for them its full benefits. This court is mindful of the fact that to save their homes under some circumstances a husband and wife will sign almost any paper that at least gives them temporary relief and "temporary relief" alone was not within the objective of the HOLC. Plaintiff bank might, after buying this property, have held it for a long time and lost money on the deal. The HOLC provided bonds which were just as good as cash. The bank evidently preferred cash to possible further loss, annoyance, and paper work. It was never intended, of course, that the act should be used as a sword but the danger of an unfortunate debtor, who probably has lost all in the depression, ever having much of an opportunity to use the act as a sword, is negligible compared to what others in a much more advantageous position could do. It might be that if there had been more definite showing of HOLC knowing the legal effect of the arrangement as it finally culminated and if the testimony of the HOLC official had been more direct, this court would be more embarrassed to arrive at this conclusion, but certainly the burden of proof which after all rests upon plaintiff has not been sustained.

Therefore in this case, following Meek v. Wilson, supra, and evidently the intent of that decision, by which this court is bound, we believe that judgment should be one of no cause of action.

Nor do we feel that the argument that there was lack of consideration for cancelling the loan can be advanced because in every one of these HOLC settlements, there is compromise of a debt by payment of only a part. So if any part of the transaction is illegal for that reason it all is.

The proper order may be submitted for the signature of this court.