## Chicago Title and Trust Company v. Julia Szymanski et al. Julia Szymanski, Appellant. Agnes Kubiatowski, Appellee.

### Gen. No. 39,261.

Opinion filed April 5, 1937.

ANDALMAN & SHAMBERG, of Chicago, for appellant; MAXWELL N. ANDALMAN and NORMAN H. ARONS, of Chicago, of counsel.

HINSHAW & CULBERTSON, of Chicago, for appellee; OSWELL G. TREADWAY and JAMES G. CULBERTSON, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Chicago Title & Trust Company, a corporation, filed its complaint in interpleader against Julia Szymanski, Agnes Kubiatowski and others and alleged, among other things, that it held $3,178 under an escrow agreement which was claimed by Julia Szymanski and also by Agnes Kubiatowski. Each of these two defendants filed her answer claiming the money. The case was heard and a decree entered that the Chicago Title & Trust Company pay $3,121.05, being the amount remaining in its possession, to Agnes Kubiatowski, and upon such payment being made it be relieved and discharged from any other duty or liability. There are other allegations in the complaint and other pleadings, and other parties are made defendants. The decree deals with other matters, but we think it unnecessary to refer to them because the contest in this court is between Julia Szymanski and Agnes Kubiatowski as to which is entitled to the $3,121.05.

The record discloses that Walter Reczek and Katarzyna Reczek, his wife, owned a piece of real estate in Chicago mortgaged to secure an indebtedness on which there was a balance due of $13,455. The notes and trust deed were owned by the defendant Agnes Kubiatowski and there being a default she filed her bill for foreclosure. Shortly thereafter Reczek and his wife applied for a loan to the Home Owners' Loan Corporation, which examined the property and agreed to lend $9,783. Upon getting this information the Reczeks and their attorney took the matter up with Agnes Kubiatowski to see whether she would accept this sum in payment in full for the amount due her. She refused

to take anything less than the face amount due her, or
$13,000. Thereafter the Reczeks took the matter up
with their friend, the defendant, Julia Szymanski, and
the latter agreed to pay $3,100 to Agnes Kubiatowski
in case the deal went through with the H. O. L. C.
Afterward Julia Szymanski deposited $3,100 with the
Chicago Title & Trust company under an escrow agree-
ment. After this was done Roy Kroeschell, as agent
and attorney for Agnes Kubiatowski, signed a written
document addressed to the Home Owners' Loan Cor-
poration, in which it is stated that Agnes Kubiatowski
is the owner of the trust deed and mortgage on the
Reczeks' property, on which there is a balance due of
$13,455; that she was informed the Reczeks had made
application to the H. O. L. C. to refund the indebted-
ness and that she "consents, if said refunding can be
consummated, to accept in full settlement of the claim
of the undersigned the sum of $9,783, face value of the
bonds of the Home Owners' Loan Corporation," etc.

Some time after this document was executed as above
stated, Agnes Kubiatowski's attorney dismissed her
foreclosure suit, which was necessary before the deal
could be consummated, exhibited evidence of this fact
to the attorney for the Home Owners' Loan Corpora-
tion, canceled the trust deed and notes belonging to
Agnes Kubiatowski and delivered them to the attorney
for the H. O. L. C. The foreclosure suit was dismissed
shortly after ten o'clock March 1, and immediately
thereafter the notes and trust deed were delivered to
the attorney for the H. O. L. C. About two o'clock in
the afternoon of the same day Agnes Kubiatowski's
attorney went to the Chicago Title & Trust Company to
obtain the $3,100, but was advised that about an hour
before it had been notified in writing by Julia Szyman-
ski to return the $3,100 to her because the agreement
entered into between the Reczeks and Agnes Kubiatow-
ski was unlawful, being in violation of section 8a of the

Home Owners' Loan Act of 1933. The next day Agnes Kubiatowski, by her attorney, served written notice on the Chicago Title & Trust Company to disregard the notice given to it by Julia Szymanski the day before, and that the $3,100 be paid to Agnes Kubiatowski in accordance with the escrow agreement. Afterward the Title & Trust Company filed its complaint, as above stated.

Counsel for Julia Szymanski contend that since the evidence shows that Agnes Kubiatowski, by her attorney, signed "a form of consent that she was accepting bonds of the H. O. L. C. in the sum of $9,783 in full settlement of the mortgage indebtedness in the sum of $13,455" owed by the Reczeks when prior to that time she had an agreement whereby she was also to receive $3,100 from Julia Szymanski, this was a violation of section 8a of the Home Owners' Loan Act of 1933. That section provides: "Whoever makes any statement, knowing it to be false . . . for the purpose of influencing in any way the action of the Home Owners' Loan Corporation . . . upon any application . . . or loan, under this Act, . . . shall be punished by a fine of not more than $5,000, or by imprisonment for not more than two years, or both." (12 U. S. C. A. Sec. 1467 (a).) Counsel say that such violation was a bar to the enforcement of the escrow agreement. In support of this contention *United States v. Kreidler,* 11 F. Supp. 402; *Jessewich v. Abbene,* 277 N. Y. S. 599; and *First Citizens Bank & Trust Co. v. Speaker,* 287 N. Y. S. 831, are cited.

In the *Kreidler* case an indictment was returned charging that Kreidler, as manager of a bank, made a written statement to the Home Owners' Loan Corporation for the purpose of influencing that corporation to make a loan to William H. Rudd in refunding a mortgage on Rudd's property which was held by the bank. The indictment charged the bank stated it would accept

the bonds of the H. O. L. C. in full settlement of its claim against Rudd; and it was alleged that this statement was false because at the time it was made the bank had an agreement with Rudd whereby he promised that if a loan could be secured from the H. O. L. C. (whose bonds would be accepted by the bank) he would execute and deliver to the bank a second mortgage on his property for the difference. It was held that this indictment charged a violation of the section above quoted. The court there said (p. 404): "A representation then by the holder of the loan that it would accept less than the face value of the debt in full settlement therefore would be relevant. Being relevant, the court could hardly say as a matter of law that the statement charged as false might not be material as a motivating force likely to influence the action of the corporation as charged. . . . I am unable to say as a matter of law that the questions raised by the indictment are not questions of fact that should not be presented to a jury." And the demurrer to the indictment was overruled.

In the instant case the evidence shows that after the foreclosure suit was filed the Reczeks made application to the H. O. L. C. and were advised that it would make a loan for about $9,700. They thereupon took the matter up with Agnes Kubiatowski, but she refused to accept less than the face amount due on her mortgage, or $13,000, because the Reczek's property, which was in foreclosure, was worth more than the amount of the indebtedness. Thereupon Julia Szymanski, a friend of the Reczeks, agreed that she would advance the $3,100 to make up the full amount of the mortgage indebtedness, which Agnes Kubiatowski agreed to accept.

The evidence further shows that Agnes Kubiatowski at no time saw any representative of the H. O. L. C., but her attorney appeared and in her behalf signed the consent above referred to. He testified that he did not

read the consent and he did not think that anything was said at the time as to the amount that was in escrow.

"Q. You didn't tell them that the agreement was consummated by the deposit of the money? A. I don't think so. Possibly I did and possibly I didn't. I really don't remember because that was common practice." He further testified that at the time he took the mortgage and notes and delivered them to a representative of the H. O. L. C. he told the representative that he had to have the "interim certificate" to exhibit to the Chicago Title & Trust Company in order to release the escrow.

The evidence is wholly insufficient to show that Agnes Kubiatowski, through her attorney, made any false statement to the H. O. L. C. for the purpose of influencing its action in any way. No representative of the H. O. L. C. was called to testify, Julia Szymanski did not testify, nor were the Reczeks called. The evidence shows that for a considerable time after the statement was signed by Agnes Kubiatowski's attorney, Julia Szymanski and her attorney knew the contents of that statement and that no mention was made in that document of the $3,100 in escrow, and it is agreed that her counsel advised her to say nothing about the matter until the foreclosure suit was dismissed and the notes and trust deed canceled and delivered to the H. O. L. C., for the reason that if objection were then made to the H. O. L. C. the deal would probably fall through and the foreclosure proceeding against the property of the Reczeks would be pushed to a decree, and that Julia Szymanski and her attorney deliberately kept quiet until the deal was consummated. Their action in this respect is reprehensible and they will not now be permitted to contend that the $3,100 should be returned to Julia Szymanski.

In the *Jessewich* case, 277 N. Y. S. 599, it was held that where mortgagees receive from the H. O. L. C. the

corporation's bonds in full satisfaction of a second mortgage and relinquish $700 balance due on the mortgage, a secret collateral agreement between the property owners and the mortgagees, whereby the owners agree to give a second mortgage for $700, was void as being in contravention of the provisions of the Home Owners' Loan Act. In that case the court said (p. 601): "Collusive agreement between creditor and home owner creating on the owner occupied home encumbrances too heavy and terms too severe for the home owner to work out his problem would easily defeat the very purpose of this act, interfere by trickery with this corporation collecting its bonds. . . . The second mortgagee would thereby benefit by his own wrong, first, in being paid by the government the greater part of his second mortgage in its tax exempt bonds which it guarantees unconditionally . . . then by getting the defendant's homestead through foreclosure for the small balance due; and, lastly, by getting the benefit of the excellent first mortgage thereon, never intended for him."

In the instant case, as we have said, there was no collusive agreement between the creditor, Agnes Kubiatowski, and the home owner. And there was no trickery indulged in by Agnes Kubiatowski or her attorney. There was no second mortgage involved.

In addition to the evidence which we have stated, it was further stipulated that the entire transaction was brought to the notice of the H. O. L. C. in May or June, 1935, and that afterward the corporation issued its bonds in accordance with the interim certificate which it theretofore had given to counsel for Agnes Kubiatowski, and that no question has been raised by the H. O. L. C. as to the validity of the transaction.

Counsel for Julia Szymanski further say that Agnes Kubiatowski failed to perform the acts required of her in the time specified in the escrow agreement. The es-

crow agreement is dated October 26, 1934, and was signed by Julia Szymanski and Nathan Schwartz, an attorney, and others; on January 22, 1935, Schwartz wrote a letter to the Chicago Title & Trust Company in which he stated: "Inasmuch as H. O. L. C. Application . . . has not as yet been completed, Mr. Roy Kroeschell, attorney for Agnes Kubiatowski, and myself, as attorney for Julia Szymanski, have agreed to extend this escrow for a period of sixty (60) days from date." This extension was agreed to by attorney Kroeschell. On the trial Schwartz testified he was not the attorney for Julia Szymanski. We will not discuss further the evidence in the record on this question because it is obvious that in view of all the evidence, including the letter signed by Schwartz, from which we have above quoted, he could not now be permitted to stultify himself and swear that he had no authority to represent her. All the evidence, except his testimony, is to the contrary. We think it clear that the court was warranted in giving no credence to his testimony on this question.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.