## Masci et ux. v. Moose B. & L. Assn.

*Theodore L. Reimel* and *George J. Edwards, 3d,* of *Edwards & Croskey,* for plaintiffs.

*Alexander Love, Jr.,* for defendant.

FLOOD, J., August 25, 1938.—The facts in this matter are agreed and the issues clear. Plaintiffs own a property which they mortgaged to defendant in 1932. In 1935, after negotiation with the Home Owners' Loan Corporation, defendant agreed to accept in satisfaction of its larger claim, $1,745.25 in cash and corporation bonds and a $600 junior lien. Later defendant wrote the corporation that it waived the right to the junior lien and would accept the $1,745.25. In the meantime, however, defendant had obtained from plaintiffs a judgment note and mortgage in the amount of $1,000, which mortgage was recorded after the $1,745.25 had been paid and the original 1932 mortgage satisfied. Plaintiffs bring their bill in equity saying that the note and mortgage are illegal because in contravention of H. O. L. C. rules, and praying that the instruments be set aside and their satisfaction of record ordered. . . .

## Discussion

When the Home Owners' Loan Corporation agreed to grant a loan secured by a mortgage upon plaintiffs' property, the proceeds were not sufficient to pay off in full the preëxisting mortgage held by defendant. Under the regulations and appraisal of the Home Owners' Loan Corporation, defendant was permitted to secure for itself a junior lien not to exceed $600, in addition to the bonds and cash which it received from the proceeds of the corporation's loan. While the negotiations were pending, defendant secretly obtained a judgment note and mortgage for $1,000 from plaintiffs, which judgment

note and mortgage were not recorded until after the Home Owners' Loan Corporation had granted plaintiffs its loan and recorded its mortgage. In the course of the negotiations with the corporation, but after it had received the $1,000 mortgage from plaintiffs, defendant wrote to the corporation that it would accept the net proceeds of the new mortgage and a junior lien of $600 in satisfaction of its claim. Later, defendant wrote that it would waive its right even to the junior lien.

Under the regulations of the Home Owners' Loan Corporation, if defendant demanded a junior lien of more than $600, the corporation would not make the loan. Therefore, its representations first that it would take a $600 lien, and finally, that it would require no junior lien at all were material facts inducing the corporation to make the loan.

Under the Home Owners' Loan Act, any false statement knowingly made and influencing the action of the Home Owners' Loan Corporation upon any application or loan is punishable by fine or imprisonment or both: Home Owners' Loan Act, sec. 8 (a) ; United States v. Kreidler, 11 Fed. Supp. 402 (S. D. Iowa, 1935). Therefore, the action of defendant was illegal and the judgment and mortgage secretly obtained by it from plaintiffs are void and unenforceable. The cases in which this matter has been considered, with one exception, are unanimous in so holding: Federal Land Bank of Columbia et al. v. Blockshear Bank et al., 182 Ga. 657, 186 S. E. 724 (1936) ; Cook et ux. v. Donner et ux., 145 Kans. 674, 66 P.(2d) 587 (1937) ; Meek v. Wilson et al., 283 Mich. 679, 278 N. W. 731; Stager v. Junker et al., 14 N. J. Misc. 913, 188 Atl. 440 (1936) ; Federal Land Bank of St. Paul et al. v. Koslofsky et al., 67 N. D. 322, 271 N. W. 907 (1937) ; Ridge Investment Corp. v. Nicolosi et al., 15 N. J. Misc. 569, 193 Atl. 710 (1937) ; Bay City Bank v. White et al., 283 Mich. 267, 277 N. W. 888 (1938). But see Chicago Title & Trust Co. v. Szymanski et al., 289 Ill. App. 600, 7 N. E. (2d) 608 (1937). See 110 A. L. R.

250 (1937). Since this case was argued, our Superior Court has adopted this view: Anderson v. Horst et ux., 132 Pa. Superior Ct. 140 (1938).

Here, however, we have a proceeding different from that in any of those cases. This is not an action by the holder of the illegally obtained instrument to enforce it but one by the obligor to have it declared void. Defendant claims that the court should leave the parties to this illegal agreement where it finds them, and should not set its process into action on behalf of either party.

It is true that this is the usual rule with regard to illegal transactions, as President Judge Keller points out in Anderson v. Horst et ux., supra, at page 145. But there is an exception which is set forth in section 601 of the A. L. I. Restatement of Contracts, p. 1116, as follows:

"If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed."

This principle is well settled. See 1 and 2 Pomeroy's Equity Jurisprudence (4th ed.) secs. 403, 940-41. I think it applies to this situation.

The act was passed for the benefit of distressed home owners. In view of the frozen condition of the mortgage and real estate market at the time this loan was made by the corporation, it was definitely to the advantage of the mortgagee in the normal case to obtain cash for the major portion of his mortgage even though he thereby lost some of the face value of the mortgage. In view of the corporation's appraisal and the distressed condition of the home owner this balance was presumably uncollectible in any event. This was the price that the mortgagee had to pay in order to get the major portion of his loan liquidated. The rule violated here seems to be designed primarily for the benefit of the distressed mortgagor in order to reduce his loan to an amount where he will be able to carry it. But a very important secondary benefit accrues to the corporation itself, since this rule tends to assure it of a

good loan which the mortgagor can carry, and not one which may likely have to be foreclosed because the mortgagor, unable to meet the heavy obligation imposed by a large second lien, may be impelled to default. Therefore, it is clear that our refusal to rescind would produce a harmful effect on both the home owner and the Home Owners' Loan Corporation, the two parties for whose protection the law making the bargain illegal exists, and would enable defendant to retain something which it agreed to surrender as part of its bargain with the corporation at the time the new mortgage was granted.

If the Home Owners' Loan Corporation were the petitioner here, it would, in our opinion, have a right to have this mortgage canceled of record. It was no party to the illegal bargain and its rights were adversely affected thereby, as pointed out above. Are we without power to cancel the mortgage of record because petitioner, who is the person primarily intended to be benefited by the law in question, was a party to the illegal bargain? The situation is somewhat different from that mentioned by President Judge Keller in the Anderson case. Here petitioner is not seeking to recover any money paid under the illegal agreement. He alone could sue for this. The Home Owners' Loan Corporation would have no right to do so. But here petitioner is seeking to cancel of record an unenforceable obligation and if we were to refuse his prayer, the corporation could next week obtain from us the very action which we would now refuse to petitioner.* In these circumstances we think that the rule quoted from section 601 of the Restatement of Contracts, supra, applies, and that petitioner should have relief.

---

* That the interest of the H. O. L. C. is important and perhaps determinative, although unrepresented on the record, may be seen from a consideration of the cases cited above. Thus, where the second mortgage was executed without the knowledge of the corporation it was always stricken, but where, as in the Ridge Investment and the Bay City Bank cases, it was given with the consent of officers of the corporation, which may then itself be considered in pari delicto, the agreement was upheld.

But plaintiff, seeking equity, should do equity. The execution of the mortgage was illegal only in that it was excessive in amount. A mortgage or other junior lien in the sum of $600 would have been valid. Defendant association should not be unnecessarily prejudiced by the illegal action of its officers even though the latter were trying to procure for it an illegal benefit. We therefore make our order conditional upon the execution and delivery to defendant of a junior lien in a form to be approved by the Home Owners' Loan Corporation in the sum of $600. Upon evidence submitted to the court that such a lien has been tendered to defendants and that it will be a lien on the property, subject only to the mortgage of the Home Owners' Loan Corporation and to any liens for taxes or city claims, the cancellation of the record of the judgment and the mortgage which are the subjects of this suit will be compelled. . . .

### Decree nisi

And now, to wit, August 25, 1938, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

That the mortgage covering premises 6310 Chester Avenue, Philadelphia, Pa., more fully described therein, conditioned upon the payment of $1,000, executed by Sammy Masci and Jennie Masci to the Moose Building & Loan Association on March 9, 1935, and recorded in the office for the recording of deeds in Mortgage Book J. M. H., no. 7487, page 273, is null and void, and defendants are directed to satisfy it of record;

That the judgment note in the same amount, of the same date, and between the same parties is null and void, and defendants are directed to surrender it to plaintiffs to be canceled;

Provided, however, and only on condition that plaintiffs first tender to defendant a junior lien in the form prescribed by the Home Owners' Loan Corporation in the sum of $600, which shall be a lien subject only to the

Home Owners' Loan Corporation's mortgage and any liens for taxes and municipal claims.

Costs to be paid equally by plaintiffs and defendant.