Gust Bealkowski, Appellant, v. John Powers and
Elsie Marie Powers, Appellants.

Gen. No. 41,635.

Opinion filed June 25, 1941.

FRANK L. DeLay, of Chicago, for appellants.

BETTIN STALLING, of Chicago, and GORDON K. MAC-INTOSH, of Washington, D. C., for Home Owner's Loan Corporation, *Amicus Curiae*; DUDLEY J. SCHOLTEN and CLARENCE M. CONDON, both of Washington, D.C., of counsel.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by the defendants from a judgment, entered upon a trial by the court without a jury, confirming and sustaining a judgment by confession. The judgment note, upon which judgment was confessed, was given by defendants to plaintiff, dated November 13, 1934, due in five years, with interest at the rate of 5 per cent per annum. Judgment was for the sum of $375.50, consisting of $250 principal, $62.50 interest, and $45 attorney's fees.

The defense offered was that the note was taken in contravention of plaintiff's agreement with the Home Owners' Loan Corporation (Consent to Take Bonds), whereby he had agreed to accept in full of his claim against defendants, amounting to $2,332, the sum of $1,585, and not to require of defendants any instrument evidencing any portion of the aforesaid obligation, or the payment of any money or any other additional consideration. The defendants contend that the note was given without consideration, is contrary to public policy and void.

Plaintiff's theory was that the note was taken at the suggestion of the Home Owners' Loan Corporation; that he did not know and was not informed of the contents of the Consent to Take Bonds; and that it is not a bar to his action. The defendant's theory was that the defense as outlined is a valid defense, that it was sustained by the evidence, and that the court should have found for the defendants. They allege that it was error for the court to find that the note was a valid obligation and ask that this court reverse the judgment, with a finding that the note sued on is void and of no effect. The plaintiff in this action did not file an appearance in this court so that we are without the suggestions that might have been offered by plaintiff as to his grounds for affirming the court's entry of the judgment appealed from.

The facts as they appear here are that the defendants, John Powers and wife, were the owners of a home in Chicago. Gust Bealkowski, held defendants' 6 per cent note for $2,200, secured by a first mortgage on their home. The note in question had matured on May 6, 1933, and defendants were in default of principal and two years' interest, a total of $2,332. The plaintiff was unable to extend the indebtedness, and was threatening foreclosure. The defendants made application to the Home Owners' Loan Corporation, hereinafter called HOLC, for a loan to take up plaintiff's claim.

The plaintiff knew of defendants' application and went to the HOLC office and talked to some unidentified person, and from the evidence it appears that he was told that if the HOLC made the loan he would receive approximately $1,600. Plaintiff testified that he told this person that he could not take that much of a loss, and that this person said to him that "If Mr. Powers is any kind of a man, you go to him, and he will sign a judgment note." The plaintiff then went to debtor's home, and on a second visit secured the $250 note here sued on. Subsequently, he went to the HOLC office, signed a "Mortgagee's Consent to Take Bonds" received $1,585 in bonds and cash, and surrendered his note and mortgage.

In 1933, by the Home Owners' Loan Act, the Federal Government adopted the policy of aiding distressed home owners. The Home Owners' Loan Corporation was formed and started operation. It is contended by defendants that many decisions have reiterated that in the dealings of the HOLC with home owners and creditors, the public policy of the United States extends over and controls the transactions. Title 12 of the Act (12 U. S. C. A., sec. 1463 (k)), authorized the corporation to make and put in operation all necessary rules. One rule so adopted (sec. 4-d (1) of ch. VI of the Manual of Rules and Regula-

tions of the Home Owners' Loan Corporation, effective October 10, 1934), provides, in substance, that the corporation will not refund any indebtedness where the mortgagor is required to pay any assumed loss of the mortgagee. It is contended that the refunding operations were entirely voluntary and required the consent of the mortgagee; that a form was adopted, entitled Mortgagee's Consent to Take Bonds, and it was necessary that mortgagee sign this before refunding could be consummated; and that such a consent was signed by the plaintiff. After enumerating the amount of defendants' indebtedness, the consent states:

"  . . . the undersigned hereby offers and consents, if said refunding can be consummated, to accept in full settlement of the indebtedness above set forth the aggregate sum of $1585, in bonds, par value, of the Home Owners Loan Corporation, in accrued interest thereon, and in cash necessary for adjustment not exceeding $25, and thereupon to discharge all claims of the undersigned against said property."

The first point contended for on this appeal is that a note taken in contravention of the agreement with Home Owners' Loan Corporation is void as against public policy. The question of the validity of notes given by home owners to make up all or a part of the loss of mortgagees who signed Consents to Take Bonds, has been passed upon by appeal courts. It is suggested that appeal courts have passed upon the question and have uniformly held that a note taken in contravention of the Consent to Take Bonds is void as against public policy. It appears from an opinion filed in the case of *Johnson v. Matthews,* 301 Ill. App. 295, that:

"The defense interposed is that the note was taken in contravention of plaintiff's agreement with the Home Owners Loan Corporation, whereby she had agreed to accept in full of her claim against the defend-

ant, amounting to $5,044.08, the sum of $1,000, and not to accept additional consideration. The affidavit also avers that plaintiff represented no notes were given in any connection with the obligation; further that the note was in fact given without consideration, contrary to public policy; and that nothing was therefore due." The court in further discussing the questions involved in that litigation, said: "A note executed and delivered under the circumstances indicated by the affidavit of merits in this case is void as against public policy. *Jessewich v. Abbene,* 154 Misc. 768, 277 N.Y. Supp. 599; *Chicago Title & Trust Co. v. Szymanski,* 289 Ill. App. 600, 7 N. E. (2d) 608; *Meek v. Wilson,* 283 Mich. 679, 278 N. W. 731."

It appears from the record in this case that plaintiff attempted to avoid the effect of signing the consent to take bonds by saying that at his first visit to the HOLC office, some person there told him that "if Mr. Powers is any kind of a man, you go to him, and he will sign a judgment note." The court did not consider that any official of the HOLC would make such a suggestion. The HOLC had adopted a rule that it would not refund any indebtedness where the mortgagor was required to pay any assumed loss of the mortgagee. This was known to the general public, as shown by the testimony of the witnesses. It was contemplated that in many cases the indebtedness would be scaled down. In *McAllister v. Drapeau,* 95 Cal. App. 604, it was said:

" . . . The act was intended solely for the benefit of home owners who were in financial difficulties— no one else was eligible for its benefits. Any benefit to creditors was merely incidental. But if a creditor could lawfully exact a secret second lien from his debtor, in many cases that would confer the benefits of the act on the creditor rather than the debtor. Thus, in every case where the terms of the secret second lien were such that the debtor was financially

unable to pay off both the first and second, the holder of the second, upon default by the debtor, could foreclose his second lien . . . and obtain the property subject to the mortgage of the HOLC . . . a very favorable type of mortgage which at that time was not generally available. In this way the creditor could and would circumvent the policy of the act and would obtain benefits never intended for him.''

It does not appear from the evidence of the plaintiff that he could identify the person making the suggestion that he take a judgment note. When he went to the Powers home to get the note, four persons were present, but he did not make any reference to the conversation with the person in the HOLC office or claim that he was taking the note because of such suggestion. His claim was that he was not satisfied with the amount the HOLC was willing to pay and wanted an additional amount, and would not take the HOLC loan unless Powers signed the note. When told that he had better keep still about taking the note he said, ''I know, I will take care of that.'' Or, as stated by the defendant, John Powers, he said, ''Never mind, that is my business.'' Plaintiff also claims that later, when he signed the papers in the HOLC office, he did not read the papers; that he did not talk to anyone; that nobody read the papers to him; and that nobody told him what was in them.

The Consent to Take Bonds that was signed by plaintiff was vital to the refunding transaction, for it was well understood that the refunding could not be made unless plaintiff signed the Consent to Take the Bonds. In signing the agreement with the HOLC— that is, the Consent to Take Bonds—without reading or knowing the contents thereof, he was negligent and because of his negligence he cannot at this time seek to avoid the agreement, nor say that he is not bound by its terms, in the manner in which he seeks to do so. It does appear that he knew that he ''signed for the

money," and certainly, if he knew that much of the agreement, he probably knew all of its terms.

Counsel for Home Owners' Loan Corporation, appearing as *amicus curiae,* having been permitted to present their views in this case, contend that part payment by the Home Owners' Loan Corporation in full settlement of the defendants' original mortgage indebtedness fully discharged the entire obligation. As already indicated in this opinion, as evidence of plaintiff's agreement to accept $1,585 in bonds and cash in full settlement of defendant's lien indebtedness of $2,332 the defendants submitted in evidence their exhibit 2, the signature to which plaintiff admitted. This instrument, Mortgagee's Consent to Take Bonds, states that plaintiff agrees to accept $1,585 in bonds "in full settlement" of the indebtedness of $2,332, and that the plaintiff represents that the only "additional consideration" required of the defendants shall be "none." Under the evidence, the obtaining of the confessed judgment at issue, and plaintiff's efforts to enforce same, is a breach of the agreement with the Home Owners' Loan Corporation and obviously an attempt to require the payment of "money" as "additional consideration."

It is the well-established principle of law that part payment in full settlement of a liquidated indebtedness by or with the aid of a third person discharges in full the entire original debt. Such a rule has been followed by the Restatement of Contracts, section 421 of which reads in part as follows:

"A payment or other performance by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it. . . ." A further discussion of accord and satisfaction can be found in 1 Corpus Juris 545, section 51, which states in part:

"Payment by a third person of a sum less than the amount due, with the understanding that it shall be in full satisfaction thereof, is a valid accord and satisfaction, and no action will lie against the debtor to recover the balance. In such case there is a new consideration from a new party, and the general rule that the receipt of a smaller sum is not a good accord and satisfaction of a larger one does not apply. . . ." The following cases are cited as passing upon a like question as here involved, and it is urged that in applying these cases to the case at bar it becomes clear that payment by the HOLC of the defendants' indebtedness to plaintiff, in accordance with the tenor of the consent agreement dated February 11, 1935, released the debtor in full. In the first cited case, *Partridge v. Moynihan,* 59 Misc. 234, 110 N. Y. S. 539, the court stated at page 541:

". . . Payment by a third person of a sum less than the amount due, with the understanding that it should be in full satisfaction thereof, is a valid accord and satisfaction, and no action will lie against the debtor to recover the balance." Upon a like question, in *Croker v. Hotchkiss, Vail & Garrison Co.,* 107 Misc. 626, 177 N. Y. S. 189 the court stated:

"Respondent's attorney, however, fails to consider the fact that the proposition in the instant case was made to, and the money paid by, a party other than the judgment debtor. Such payment, in whatever amount, has invariably been held to be sufficient consideration for an accord and satisfaction." It would appear from the cases involving the Home Owners' Loan Corporation that the Mortgagee's Consent to Take Bonds operates as a release in full of the debtor's liability and that, therefore, any additional consideration taken by the creditor representing an alleged loss in the refinancing is void. In *Chaves County Building & Loan Ass'n v. Hodges,* 40 N. Mex. 326, decided by the Su-

preme Court of New Mexico, it was held that the Mortgagee's Consent to Take Bonds executed by the association was an agreement binding upon the association and which Hodges, the debtor, could enforce. The following cases are applicable to the question here involved; *Willcox v. Cobb,* 58 Ga. App. 39; *First Citizens Bank & Trust Co. of Utica v. Speaker,* 250 App. Div. 824, 294 N. Y. S. 737; *Jessewich v. Abbene,* 154 Misc. 768, 277 N. Y. S. 599; *Lyon v. Adams,* 250 App. Div. 737, 294 N. Y. S. 732; *Westchester Trust Co. v. Bricker,* 246 App. Div. 778, 285 N. Y. S. 412.

It would appear, as we have already indicated, that the Home Owners' Loan Act of 1933 was an emergency measure enacted for the relief of home owners who were unable to carry or refund their mortgage indebtedness. It provided for the exchange of HOLC bonds and cash for the mortgage and bond, or other obligation held by the mortgagee, and for the execution of a new mortgage by the home owner to the Home Owners' Loan Corporation. It is apparent that the purpose and intent of the act was to free the owner's home property from an oppressive mortgage or other liens, and to reduce and settle his obligations so as to give him a chance to become rehabilitated.

It is to be observed from the statement offered to this court by *amicus curiae* that the test of secrecy with reference to HOLC refinancings is not necessarily the creditors' intent to fraudulently cover up collateral agreements between the debtor and himself, but the fact that such collateral agreement exists unknown to the HOLC. In view of plaintiff's signed representation to the HOLC that he would no longer require of defendants any more money or other consideration, it can hardly be urged, and indeed has not been urged in the instant case, that the HOLC was aware of the existence of the cognovit note upon which was predicated the judgment at issue.

For the reasons stated in the opinion we are of the opinion that the court erred in confirming and sustaining the judgment by confession and the judgment so entered is reversed, and judgment will be entered here for defendants.

*Judgment reversed and judgment for defendants.*

DENIS E. SULLIVAN and BURKE, JJ., concur.