## HAROLDSEN v. YEATES

No. 6537.   Decided July 19, 1943.   (140 P. 2d 350.)

See 17 C. J. S., Contracts, sec. 212; Home Owners' Loan Act, notes, 100 A. L. R. 1413; 110 A. L. R. 250; 121 A. L. R. 117; 125 A. L. R. 809.

*L. E. Nelson,* of Logan, for appellant.

*Young & Bullen,* of Logan, for respondent.

MOFFAT, Justice.

Defendant below appeals from a judgment against him on ten one hundred dollar promissory notes payable to plaintiff and made and executed by defendant and his wife (the

latter since deceased) on November 12, 1936, the notes falling due from one to ten years, respectively, after date. The principal of the first note was paid January 13, 1938, but in default of further payment of principal or any interest, plaintiff declared the full amount due, under the terms of the notes, and brought this action January 25, 1941, to reduce the obligations to judgment. Defendant answered and counterclaimed, admitting the execution and delivery of the notes, but alleging that their execution was exacted under duress, without consideration and against the public policy of the Home Owners' Loan Act of 1933, 48 Stats. 128, 12 U. S. C. A. § 1461 et seq., and prayed for the cancellation of the notes and the return of the hundred dollars paid thereon. Plaintiff replied, setting up affirmative matter in denial of the allegations of defendant's answer and counterclaim and praying judgment of dismissal of the latter. The case was tried to the court sitting without a jury, and findings of fact, conclusions of law and judgment were made and entered in favor of plaintiff. Plaintiff and defendant are brothers-in-law, plaintiff's wife being a sister of defendant.

The story begins in 1928 with the execution by defendant of an unsecured note for $700 payable to plaintiff for money loaned at that time. On May 20, 1931, plaintiff advanced to defendant on another note the further sum of $3200 and, on January 9, 1932, defendant and his wife executed a mortgage to secure this latter note. The mortgage described two parcels of real estate in Cache County, Utah, Tract No. 1 covering the home property of defendant and Tract No. 2 being a piece of farm or pasture land of 7.16 acres located about a half mile away. This mortgage was recorded February 6, 1934. Defendant paid to plaintiff $111.96 on December 1, 1931, and $140 on December 13, 1933. There is no evidence as to which obligation these payments were applied.

After a conversation between the parties with reference to this mortgage indebtedness, in which plaintiff indicated that he was in need of money, defendant on October 30, 1933,

made application to the Home Owners' Loan Corporation (hereinafter referred to as HOLC) for a loan of $2107.24 to refinance the obligation, describing therein Tract No. 1, the home tract, and stating that the total encumbrance or lien on the property was a "first mortgage to Morgan Haroldsen for $2,000.00." On the same day, plaintiff executed and filed the following "Mortgagee's Consent To Take Bonds":

"To Home Owners' Loan Corporation:

"The undersigned is the *holder of a first mortgage* or other obligation, which constitutes a lien or claim *on the title to the home property of Leo Yeates located at Nibley, Utah, in the sum of* $3000.00.

"Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as passed by Congress and approved by the President, and *the undersigned hereby consents, if* said refunding can be consummated, *to accept in full settlement of the claim of the undersigned the sum of* $2000.00, face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $50 cash as provided in said act, *and thereupon to release all the claim of the undersigned against said property.*

"It is understood that you will incur trouble and expense in connection with your effort to refund the indebtedness of said home owner, and this consent is executed in consideration of the same and shall be binding for a period of 60 days from date.

"This, the 30th day of October, 1933. (Sgd.) Morgan Haroldsen." (Italics ours.)

The property was appraised at $2500 and a loan of $2000 was approved by the HOLC. On February 3, 1934, plaintiff signed and filed the following:

"Home Owners Loan Corporation
Ogden, Utah

Gentlemen:

This is to certify that *I will accept the sum of* $2000 *in bond[s] of the Home Owners' Loan Corporation,* after deducting any amounts for payment of taxes and costs of closing loan, *on my mortgage indebtedness against Leo Yeates,* on application No. 535.

Very truly yours,
(Sgd.) Morgan Haroldsen."

(Italics ours.)

On February 23, 1934, a partial release of the mortgage was executed by plaintiff and later recorded describing the home Tract No. 1 and providing that,

"It is especially understood and agreed, however, that the release of the above described property from said mortgage shall in no wise or any manner affect the lien of the said mortgage upon the remainder of the property described in the said mortgage."

Defendant and his wife executed and delivered to the HOLC on March 19, 1934, a note and mortgage for $2000 covering the home Tract No. 1 and plaintiff received and accepted $1850 in bonds and $17.21 in cash, a total of $1867.-21, from the HOLC, the difference between that amount and $2000 being used to defray delinquent taxes for 1932 and 1933 and costs of closing the loan. Plaintiff thereupon surrendered to the HOLC the original note and mortgage for $3200. Defendant testified that he knew the partial release only released the home Tract No. 1 from the mortgage and that he did not ask for a total release at the time

"because I felt that Mr. Haroldsen wasn't figuring on releasing the whole thing; he still held the $700 note against me, which it was all right if he wanted to hold that as security."

Plaintiff testified that he did not know who prepared the partial release of mortgage; that he received it by mail, executed it, and returned it by mail to the HOLC.

On November 12, 1936, some two and a half years later, plaintiff called on defendant at the home of the latter's mother and a conversation was had with respect to the balance due on the "indebtedness." Plaintiff insists nothing was said about the $700 note, but that he told defendant he would accept Tract No. 2 and $1000 in full settlement of what was owing him on the mortgage indebtedness. Defendant testified that he insisted he owed plaintiff only the $700 and that he had paid the mortgage indebtedness "two years and a half ago," and that plaintiff then asked him if he thought that was fair to his sister, plaintiff's wife; that his

mother cried and pleaded that something should be done to avoid hard feelings in the family. There is direct conflict in the testimony as to just what was agreed to or understood by the parties, but the fact remains that defendant and his wife on that date executed and delivered to plaintiff a warranty deed to Tract No. 2, on which a value of $1000 was placed, and made and delivered the ten one hundred dollar notes sued upon in this action. Not until 1938 did plaintiff surrender to defendant the $700 note after plaintiff had sold Tract No. 2 to another party, and then on May 5, 1938, he executed a final and complete release and discharge of the $3200 mortgage, which was recorded September 13, 1938.

The trial court found that the HOLC accepted defendant's application for a loan to refinance that portion of the mortgage indebtedness "properly apportioned" to the home Tract No. 1, but did not refinance the portion "properly apportioned" to the farm land, Tract No. 2; that the HOLC "procured to be executed by plaintiff" a partial release of the mortgage, releasing Tract No. 1, but retained the mortgage lien on Tract No. 2 "to secure the indebtedness not paid" by the bonds of the HOLC; that the HOLC "had full notice that the plaintiff intended to retain a lien on" Tract No. 2 to secure the unpaid portion of the mortgage; that plaintiff and defendant and the HOLC "did not intend to effect an accord and satisfaction of the indebtedness remaining unpaid on said mortgage indebtedness and on said $700.00 note after the application of the bonds of said corporation in the sum of $2000.00 had been made but intended that said indebtedness should still remain and that it was not in violation of public policy and of the rules and regulations of the Home Owners' Loan Corporation to permit said indebtedness to remain the valid and subsisting indebtedness of the defendant"; that on November 12, 1936, "in consideration of the cancellation of said indebtedness" the defendant conveyed to the plaintiff Tract No. 2 and made, executed and delivered the ten one hundred dollar notes referred to; that the conveyance and notes were made freely and voluntarily

by defendant "as a part of the same transaction and not because of any duress practiced by plaintiff on defendant," and for a valuable consideration, namely, "the cancellation of all of said indebtedness as above set forth"; that the payment of $100 made by defendant to plaintiff on January 13, 1938, was properly made and applied to said promissory notes and "was not in violation of the policy or rules and regulations of the Home Owners' Loan Corporation."

The policy and purpose of the HOLC act, above cited, is stated in the enacting clause,

·"To provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, to extend relief to the owners of homes occupied by them and who are unable to amortize their debt elsewhere"

and by Sec. 1463 (d) it was provided that the Corporation may

"make advances in cash to pay the taxes and assessments * * * and to pay such amounts, not exceeding $50, to the holder of the mortgage * * * acquired as may be the difference between the face value of the bonds exchanged plus accrued interest thereon and the purchase price of the mortgage" and "In any case in which the amount of the face value of the bonds exchanged plus accrued interest thereon and the cash advanced *is less than the amount the home owner owes with respect to the home mortgage* * * * so acquired by the Corporation, *the Corporation shall credit the difference between such amounts to the home owner and shall reduce the amount owed by the home owner to the Corporation to that extent.*"

And we thus find it repeatedly held that

"The purpose of [this chapter] was to enable owners of homes to save homes from foreclosure by advancing on first mortgages, sums to be used to pay off liens and to lighten burdens of home owners, *the benefit that might accrue to lienholders* being incidental." (Italics ours.) *Meek* v. *Wilson*, 1938, 283 Mich. 679, 278 N. W. 731; *Weber* v. *Sternad*, 1941, 69 Ohio App. 258, 39 N. E. 2d 623; *Bealkowski* v. *Powers*, 1941, 310 Ill. App. 662, 35 N. E. 2d 386; *Richard R. Adams Co.* v. *Pacific States Sav. & Loan Co.*, 1939, 34 Cal. App. 2d 723, 94 P. 2d 370; *McAllister* v. *Drapeau*, 1939, 14 Cal. App. 2d 102, 92 P.

2d 911, 125 A. L. R. 800, superseding opinion in 85 P. 2d 523 (and see extensive notes gathered in HOLC cases in 125 A. L. R. 800).

In the light of the foregoing we examine the evidence in the case before us. At the time defendant filed his application with the HOLC, plaintiff executed the consent to take bonds hereinabove set out in full. In that instrument plaintiff stated he was

"the holder of a first mortgage * * * which constitutes a lien or claim on the title to the home property of Leo Yeates located at Nibley, Utah, *in the sum of* $3000.00"

and that he thereby consented

"*to accept in full settlement of the claim of the undersigned the sum of* $2000.00 *face value of the bonds of Home Owners' Loan Corporation,* to be adjusted with not exceeding $50 cash as provided in said act, *and thereupon to release all the claim of the undersigned against said property.*"

After the home Tract No. 1 had been appraised at $2500 and a loan approved for $2000, plaintiff executed the second and further consent agreement in which he stated,

"This is to certify that *I will accept the sum of* $2000 *in bond[s] of the Home Owners' Loan Corporation,* after deducting any amounts for payment of taxes and costs of closing loan, *on my mortgage indebtedness against Leo Yeates,* on application No. 535."

The application describes only Tract No. 1, the land on which defendant's home was located. It also contains the statement,

"11.   The total encumbrances or liens on the property are to parties and for amounts as follows:  First mortgage to Morgan Haroldsen for $2,000.00."

Plaintiff contends this is evidence proving that defendant intended only to pay off that amount of the mortgage indebtedness and to leave the balance due and owing and secured by Tract No. 2 which was not released by the partial

release of mortgage. Defendant erroneously contends in his brief that no such reference to the mortgage indebtedness was made in the application. There is no evidence as to why the amount of $2000 was stated at this point in the application, instead of $3200, the face amount of the note and mortgage; nor is there any evidence as to why plaintiff in the first consent agreement designated the mortgage indebtedness as $3000 instead of $3200. It is admitted the defendant had paid about $250, and that amount only, on all the indebtedness prior to the HOLC loan. The inference from all the facts and circumstances is justifiable that $3000 was stated in the consent agreement in round numbers as the amount due on the mortgage indebtedness in view of what had been paid thereon, and that $2000 was so stated in the loan application because that was the scaled-down amount agreed upon to be accepted "in full settlement of the claim" of plaintiff.

In next considering the partial release of the mortgage, which expressly retained the mortgagee's lien on the farm Tract No. 2, we are confronted with another anomalous situation. Both parties guess as to where and by whom the partial release was prepared. Plaintiff testified he received it in the mail in Idaho Falls, executed it and returned it by mail to the HOLC. Plaintiff's counsel contends in his brief that it was prepared by the HOLC with full knowledge and notice that it was plaintiff's intention to retain Tract No. 2 under the mortgage lien as security for the balance of the mortgage indebtedness. Defendant contends that the HOLC could not have prepared the release because it did not have knowledge of the inclusion of Tract No. 2 in the mortgage at that time. There is a direct conflict in the testimony on the question. As hereinabove stated, defendant testified that he knew Tract No. 2 was not released and that he thought plaintiff's purpose in not releasing it was because of the outstanding unsecured debt of $700 still owing from him to plaintiff. There is no oral or written evidence in the record that the HOLC had knowledge of or had given its

consent to any understanding or agreement between the parties which would contravene the plain language of the consent agreements executed by plaintiff to accept $2000 in bonds "in full satisfaction" of his "mortgage indebtedness" against the defendant. Upon completion of the loan, plaintiff received and accepted $1850 in bonds of the HOLC and $17.21 in cash and surrendered the original note and mortgage, evidencing the $3200 debt, to the HOLC.

Much more could be said pro and con as to the oral and written evidence and the circumstances surrounding the conveyance by defendant and wife on November 12, 1936, of Tract No. 2 to plaintiff (in payment, as defendant contends, of the unsecured $700 note) and the execution of the ten one hundred dollar notes sued upon herein and which purportedly were given in recognition and payment of the balance alleged to be due on the mortgage indebtedness, but in view of what we have already said, we must hold that the findings, conclusions and judgment of the trial court are not in harmony with the great weight of the evidence and not in accord with the law which must control this case.

In *Chaves County Bldg. & Loan Ass'n* v. *Hodges,* 1936, 40 N. M. 326, 59 P. 2d 671, 673, the defendant Hodges executed a mortgage to plaintiff to secure a note for $9000 and encumbered two lots adjoining each other at the rear and facing on different streets, the home of defendant being located on one and a laundry building on the other. Defendant, being in arrears on the mortgage note, obtained a loan from the HOLC of $6,880.19 which plaintiff in a "consent" agreement with the HOLC agreed to accept in full satisfaction of his claim, stated to be in the amount of $9,680.76. Plaintiff accepted the bonds and released the home property from the mortgage by partial release, and later sued defendant and foreclosed the mortgage on the laundry property, obtaining a decree for $3247.37. Defendant appealed and urged accord and satisfaction of the full mortgage indebtedness. Plaintiff introduced evidence, over objection at the trial,

that at the time of the delivery of the mortgagee's consent to take bonds, the HOLC manager was informed that plaintiff would execute a partial release of the mortgage. The manager testified he did not know until after the loan was closed that the mortgage covered two pieces of property. On the showing made, the Supreme Court of New Mexico held:

"Under the court's finding, this consent to take bonds is a valid agreement to take $6,880.19, face value of the bonds of Home Owners' Loan Corporation, in full settlement of the claim of $9,680.76.

"The court erred in admitting evidence of the alleged oral agreement made contemporaneously with the consent to take bonds. *The debt is the important thing—the security is incidental. When the debt is discharged, the mortgage falls.* * * *

"In *Val Verde Hotel Co.* v. *Hubbell*, 27 N. M. 545, 202 P. 982, we said: 'The admissibility of oral agreements made contemporaneously with written contracts has been fully discussed by this court in *Locke* v. *Murdoch*, 20 N. M. 522, 151 P. 298, L. R. A. 1917B, 267; *Baca* v. *Fleming*, 25 N. M. 643, 187 P. 277, and *Prentice* v. *Cain*, 27 N. M. 368, 202 P. 121. It is unnecessary to review the authorities. In the second case cited this court held that the parol agreement, to be enforceable, must be in respect of a matter distinct from that covered by the written contract, and that the party to that contract may not prove a parol agreement which devitalizes the writing and changes its stated purpose."

The decision then orders the cancellation of defendant's note and mortgage upon defendant paying the HOLC in full or tendering a mortgage pledging both lots, as security for the payment of the HOLC mortgage.

As applied to the instant case, defendant made timely objection to all testimony of plaintiff relating to repayment of the mortgage indebtedness prior to the execution of the consent agreements by plaintiff, as being in violation of the parol evidence rule. The objection was overruled, the court saying:

"We will go ahead and see what develops. After getting into the law on this matter, if I find out that it should not be considered, then it wont be considered."

The objection should have been sustained. These consent

agreements and resulting settlement constituted an accord and satisfaction of the entire mortgage indebtedness.

The case of *McAllister* v. *Drapeau*, 14 Cal. 2d 102, 92 P. 2d 911 (reversing the District Court of Appeals decision in 85 P. 2d 523) is a leading case on the subject matter, contains citations of a large collection of cases, and is reported with notes from numerous HOLC cases in 125 A. L. R. 800. A second note and mortgage given by plaintiff following a loan settlement through the HOLC were cancelled as having been given without consideration and in violation of the HOLC Act, and the defendant ordered to repay to plaintiff the amount paid thereunder.

It follows from the foregoing that the findings, conclusions and judgment of the trial court must be and they are hereby ordered vacated and set aside, with instructions to enter findings and judgment in favor of appellant, cancelling and voiding the ten notes sued upon as having been executed without consideration and in violation of the policy of the HOLC Act, and ordering respondent to repay to appellant the $100 paid thereon with interest. Costs to appellant.

LARSON and McDONOUGH, JJ., concur.

WOLFE, Chief Justice.

I dissent. I think the testimony and the exihibits show that it was not intended that plaintiff agree to a settlement of his *full* morgage indebtedness against both the home and the other tract by accepting $2,000 in bonds.

In the first place, the testimony of the conversation between Haroldsen and Yeates before any application for a loan was made, as given by Haroldsen, was straightforward. Much of the testimony of Yeates was anything but clear-cut. And the exhibits, if carefully examined, bear out the intent as testified to by the plaintiff.

On October 30, 1933, the defendant filed an application for a $2,000 loan. He described *only* Tract No. 1 (the home

property) as security for the loan and in answer to question 11 asking as to

"the total encumbrances or liens on the property [meaning that described in the application—the home property] are to parties and for the amounts as follows"

he answered,

"First Mortgage to Morgan Haroldsen for $2,000."

He himself allocated only $2,000 of the $3,200 indebtedness to the home property. This application is numbered 535. Haroldsen, on this same 30th of October, signed a paper showing a willingness to accept bonds in the sum of $2,000 and agreed thereupon to "release all the claim of the undersigned against *said* property." (Italics added.) "Said property" is described as "home property of Leo Yeates located at Nibley, Utah." He did say that the lien or claim on said "home property" was $3,000 which was the truth. But this consent to release all claims against the *home property* is not the equivalent of a consent to release all claims against the *defendant*. It consents only to a release of the lien against the property. Since this acceptance paper and the application listing only the home property went in together it is obvious that Haroldsen was agreeing to release his indebtedness, only as against the home property. On February 3, 1934, Haroldsen sent the following letter to the Home Owners Loan Corporation:

"Gentlemen:

"This is to certify that I will accept the sum of $2,000 in bond of the Home Owner's Loan Corporation, after deducting any amounts for payment of taxes and costs of closing loan, on my mortgage indebtedness against Leo Yeates, on application No. 535."

It will be noted that the acceptance again covers "My mortgage indebtedness against Leo Yeates on application No. 535." That was there listed as $2,000.

The satisfaction of the mortgage executed by Haroldsen was only that on the home tract. It so specified. The Home Owner's Loan Corporation took this release which released only the home property and was satisfied. There was no side agreement, no deceit and no giving of a second mortgage afterward. There was nothing covert about the conduct of the plaintiff or which smacked of taking advantage of his position as creditor to compel the debtor to give a secret second mortgage on the home or a side note. The mortgage was already on the Tract No. 2 and therefore did not endanger the home.

The parties intended to accomplish in a short fashion that which would have been accomplished had the overall mortgage on the two tracts been cancelled before defendant's application to the Home Owner's Loan Corporation and the debt split and two mortgages given. And the HOLC so took that to be the real situation.

In any event, the plaintiff is entitled to have determined the value of Tract No. 2 which together with the ten notes for $100 each was given as consideration to pay both the $700 note plus interest and the $1,000 of the $3,200 indebtedness which he considered still owing. There was no evidence that Tract No. 2 was worth $700 and the interest. There is some evidence that it was worth only $500. Therefore, in any event, plaintiff is entitled to recover on so many of the ten notes as will pay the difference between the value of Tract No. 2 plus what defendant has paid him on the notes ($100), and the $700 plus interest.

The opinion orders that all the notes be cancelled and that the respondent pay back the $100. This, in any event, is most certainly erroneous.

WADE, J., concurs in the views expressed by WOLFE, C. J., in his dissenting opinion.