MARDEROS PAPAZIAN *et al. vs.* HACHADOOR S. EMERZIAN.

DECEMBER 21, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a bill in equity brought by Marderos Papazian and wife to enjoin foreclosure of a second mortgage on certain real estate in the city of Providence and to have that mortgage voided, cancelled and discharged as being in violation of the Home Owners' Loan Corporation Act of 1933 and of a certain regulation adopted thereunder. After a hearing in the superior court on bill, answer, replication and proof, a decree was entered denying and dismissing the bill. The cause is before us on complainants' appeal from this decree.

For convenience, we will treat the cause as if Marderos Papazian were the sole complainant, title to the property standing in his name alone; and for brevity, we will refer to the Home Owners' Loan Corporation as H.O.L.C. or the corporation.

The basic averments in the bill are: (1) That the mortgage was taken secretly and without the knowledge of H.O.L.C.; (2) that the amount of the mortgage exceeded the difference between the corporation's appraised value of the property and the amount of the first mortgage to it; (3) that the mortgage is void because in violation of the H.O.L.C. act and of the regulations adopted thereunder; and (4) that the mortgage constitutes a hardship upon the complainant and is unenforceable because it does not provide

for amortization, by means of monthly or other reasonable payments, of the indebtedness which it purports to secure.

Since the complainant claims that the trial justice misconceived the facts and misconstrued the law, we are compelled to recite the facts in this cause at greater length than would ordinarily be the case. The following pertinent facts clearly appear from the evidence. In 1928 the respondent took a second mortgage for $3000 on the property in question. In 1933 the complainant applied for a mortgage loan from H.O.L.C. in order to meet certain obligations in connection with his real estate, particularly the demands of the first mortgagee, which was threatening foreclosure proceedings.

During the negotiations that followed such application and for some time after the loan was approved by H.O.L.C., complainant's present attorney acted for complainant as a friend and without compensation. In answer to an invitation from this attorney, the respondent called at his office and they then discussed the latter's position respecting his second mortgage in reference to complainant's application for a loan from H.O.L.C. Omitting unnecessary details, as to which the testimony is conflicting, the result of this meeting was that the attorney filled out for the respondent an H.O.L.C. form entitled "Mortgagee's Consent to Take Bonds", which, after being signed by the respondent, was mailed by the attorney to the Providence office of the corporation. This consent, identified as complainant's exhibit K in the numerous exhibits in this cause, will be more fully discussed by us later in this opinion.

In the course of time, H.O.L.C. approved a loan to the complainant of $8400 at 5%. On May 4, 1934 two mortgages were executed at the office of the Title Guarantee Company of Rhode Island, a first mortgage for $8400 to H.O.L.C. and a second mortgage for $1991.15 to the respondent, which is the mortgage involved in this cause. Besides the complainant and his wife, those present on this occasion were C. Edwin Lewis, a representative of the title company, who

acted as "closing officer"; a representative of the then first mortgagee; the respondent; and, according to the complainant, "someone from the Home Loan". The respondent also testified that the "Home Owners Loan Officers" were there.

After the above mortgages and other papers in connection therewith were executed, the corporation distributed $8000 in bonds under the mortgage to it of $8400, and, as directed in an "Authorization for Delivery of Bonds", it delivered approximately $7000 of those bonds to the first mortgagee in full satisfaction of its claim, and $1000 of such bonds to the respondent. The balance of some $400 was used by the corporation to pay certain outstanding obligations of the complainant in connection with his real estate and the expenses incident to the mortgage to it of $8400. At the time when the bonds were thus distributed the respondent also received the second mortgage in question in lieu of the balance of his claim.

In view of another contention by the complainant which we will discuss later in this opinion, we note here that, before the transaction involved in this cause was consummated, respondent's claim under his original second mortgage, with accumulated interest, amounted to $3130. Deducting from this sum the $1000 in bonds which he received from the corporation under the first mortgage to it of $8400, there was due him a balance of $2130 under that second mortgage. The second mortgage in dispute, which the corporation approved and which he finally and unreservedly accepted, is for $1991.15, or about $139 less than the actual balance of $2130 due him under his original second mortgage after crediting thereon the amount of $1000 which he had received in bonds.

The testimony of Lewis, the "closing officer", in substance is that the title company "handled the Home Loan papers . . . they sent us all their vouchers and checks to be dispersed at the closing . . . . The bonds accompany the papers"; and that, in every transaction in which H.O.L.C. was a party, the title company sent a statement to the

"Home Loan for their approval *before* the matter is closed", which statement, when approved by the corporation, constituted the directions that the title company followed in closing the transaction. (italics ours)

Referring directly to the transaction under consideration, Lewis testified that the second mortgage to the respondent was prepared by the title company at the direction of and in accordance with instructions from H.O.L.C. There is also in evidence a statement of the disbursements made by Lewis at the closing of this transaction, a copy of which was sent to the corporation. Attached to this statement is a card with the notation "Draw 2nd mtg & note Hachadoor S. Emerzian 5%—3 yrs" which "was following the directions of the Home Owners' Loan".

This witness further testified that no forms were provided by H.O.L.C. for second mortgages; that when the corporation consented to a second mortgage the preparation of such a mortgage in the approved amount and terms was left to the title company; that there was a general ruling of H.O.L.C.'s legal department that second mortgages should be for not less than three years and at not more than 5%; that the title company was "closing ten to twenty" such mortgages a day in this state; that it was "in constant conference with the Legal Department, acting with them and carrying out requirements of the H.O.L.C. in closing these mortgages"; and that in carrying out the transaction in question the title company acted on the advice of local counsel for the Home Owners' Corporation.

We will now turn to the most important exhibits before us, all of which are on H.O.L.C. forms and came from the files of the corporation. Complainant's application for a loan of $9600 is dated September 27, 1933. An "Investigation and Preliminary Appraiser's Report" by Charles E. Brady on January 3, 1934 values the property at $10,300 and recommends a "fee appraisal". Another such report by John J. Regan on January 9, 1934 values the property at $10,500 and does not recommend a mortgage of $9600. A

detailed "Appraiser's Report", by Thomas F. Cullinan on April 9, 1934, values the property "as per HOLC Formula" at $9660. There is also in evidence a financial report by Dun & Bradstreet, Inc., dated April 19, 1934, which gave the complainant a good rating.

On the date last mentioned, the state manager of H.O.L.C. endorsed the following report and recommendation on complainant's application of September 27, 1933: "For the permanent record . . . As State Manager I hereby determine the final appraisal of the within property as $10,500. I have increased the fee appraisal to within ten per cent of the same in accordance with the regulations of the H.O.L.C. after considering the preliminary and fee appraisals." On that same day the state manager, the chief appraiser and the chief counsel of the corporation, sitting as a board, approved a loan to the complainant of $8400.

As the state manager's report and the board's approval thereof do not mention a second mortgage, we must here revert to respondent's consent to take bonds, which was specifically identified by us as complainant's exhibit K earlier in this opinion. The printed form, which complainant's attorney filled out for the respondent under the circumstances hereinbefore described, was the form ordinarily used by the corporation in connection with first mortgages only.

Respondent's consent on that form is addressed to the "Home Owners' Corporation"; it is dated April 3, 1934; and, as already stated, it is signed by him. The body of this form begins as follows: "The undersigned is a holder of a first mortgage . . . in the sum of $3130 including unpaid balance of principal and interest, to date." The word "first" is interlined and immediately over that interlineation is written the word "second". Since what we are about further to quote from the body of this instrument is partly printed and partly written, and as the written matter which was added has a material bearing in this cause, we will underscore the written words. "Being informed that said owner

has made application to Home Owners' Loan Corporation to refund his said indebtedness . . . the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of *$1000,* face value of the bonds of Home Owners' Loan Corporation, (*balance on 2nd mtg 3 years at 6% payable quarterly*) . . . and thereupon to release all the claim of the undersigned against said property *except the mortgage for balance as stated."* The interlineation and writing are in black ink.

Joseph H. Coen, state counsel of H.O.L.C. at the time of the transaction under consideration, testified that the corporation had no forms applicable to second mortgages; that amortization of the loan was required only in connection with first mortgages; that although he could not recall the details of this particular transaction, as his office was then closing about three hundred loans a week, yet, after examining respondent's consent to take bonds, or exhibit K, he could testify that the corporation had accepted "this particular record with the printing changed over" and that it had "approved a second mortgage in the amount necessary to close the transaction." We note at this point that respondent's consent to take $1000 in bonds was originally conditioned upon his receiving a second mortgage for three years at 6%, whereas later the corporation authorized and he accepted the second mortgage now in dispute, which is for three years but at 5%.

After paying interest on this second mortgage for about a year following May 4, 1934, the complainant first failed to pay any more interest, alleging financial difficulties as the cause, and then positively denied any further liability thereunder on the ground that it was invalid as a matter of law. In 1942 the respondent began proceedings to foreclose the mortgage, whereupon the complainant brought this bill of complaint.

Although much of the evidence is undisputed, as it consists of documents from the official files of H.O.L.C., there

is some conflicting evidence in the testimony of the parties and their witnesses. On all the evidence, the trial justice made a number of findings of fact, the most pertinent of which are as follows: First, that, when the first mortgagee was threatening to foreclose its first mortgage on complainant's property, the respondent cooperated with complainant to procure a loan from H.O.L.C. to pay off the first mortgage; second, that H.O.L.C. approved the new second mortgage to the respondent and ordered its preparation by the Title Guarantee Company; and third, that the execution and delivery of the second mortgage to respondent were in strict compliance with the orders of H.O.L.C. On the questions of law which were argued to him, he found that the transaction was in accord with the act and the regulation of the corporation in reference to second mortgages.

The complainant contends that he was never authorized by H.O.L.C. to execute the second mortgage in question to the respondent; that Lewis of the title company placed such mortgage on his property "as Emerzian dictated"; that since the state manager or the committee of H.O.L.C. never saw the mortgage "they could not have approved its terms"; and that the first real knowledge of the mortgage "came to the Home Owners' Loan Corporation from Emerzian in April, 1935" when, according to the complainant, he was forced by a "Mr. Fisher", an employee of the corporation, to stop paying anything to the respondent because he was falling behind in his payments on the first mortgage. The "Mr. Fisher" just mentioned was not otherwise identified, nor did any person by that name testify as a witness in this cause.

We have already stated the pertinent evidence bearing on these contentions. Applying our well-established rules governing a review of the findings of fact by a trial justice, our answer to complainant's contentions is that a careful examination of all the evidence leads us to the conclusion that the findings of fact by the trial justice on conflicting evidence are not clearly wrong, and that his inferences from

the undisputed evidence are reasonable and support his findings. In these circumstances, the decision of the trial justice will stand unless we find, as the complainant contends, that the decision is erroneous in law.

Although the act itself makes no mention of second mortgages, § 1463 (k) thereof provides that "The Board is authorized to make such bylaws, rules and regulations, not inconsistent with the provisions of this section, as may be necessary for the proper conduct of the affairs of the Corporation." The parties agree that in conformity with this authorization the corporation adopted the following regulation, which, they further agree, was valid and in force at the time of the transaction now under examination.

"Second Mortgages—'Where the full amount of the indebtedness against the property cannot be refunded by the corporation, the mortgagee or other lien holder will be permitted to take a second mortgage or second deed of trust if the amount of such second mortgage or deed of trust does not exceed the difference between the corporation's appraisal and the amount of the corporation's first mortgage.

'In no case shall the second trust or second mortgage to such other mortgagee or lien holder be in terms which would cause the mortgagor's payments to the corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust.'"

The controlling law applicable in this cause is set forth in the above-quoted regulation. We do not find the slightest evidence of fraud in the record before us, although complainant alleges fraud in his bill. In the circumstances, the law point upon which he most strongly relies is that respondent's second mortgage is void, even without fraud, because it fails to provide for amortization of that mortgage for the period covered by the first mortgage to the corporation.

In the exercise of the power unquestionably conferred by the act, the corporation adopted the above regulation. On January 31, 1934, in a bulletin from Washington, D. C., the general manager of the corporation advised all state man-

agers that no second mortgage would be allowed under any circumstances when the amount thereof exceeded the difference between the corporation's appraisal and the first mortgage to it; or one that by its terms would make the mortgagor's payment to the corporation a hardship. Neither the regulation nor the bulletin fixes the specific terms upon which a second mortgage might be allowed by the corporation.

The two limitations that the regulation places on the power of the corporation to allow a second mortgage are clearly distinguishable in their nature. The first is mandatory and permits of no deviation therefrom; the second is discretionary in character and allows the corporation reasonable leeway in fixing the terms of a second mortgage which it deems proper under all the circumstances known to it at the time of its approval of such a mortgage.

We cannot disregard the usual and ordinary meaning of the plain language of the regulation. As neither the act nor the regulation expressly or impliedly requires amortization of a second mortgage before it shall be approved or become valid, it is not within our power to add to the regulation a requirement which the framers did not include therein.

Although the corporation is bound by the regulation to use reasonable discretion in fixing the terms of a second mortgage, so that they would not "cause the mortgagor's payments to the corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage", the exercise of that discretion must necessarily be based upon a fair consideration of the circumstances known to the corporation *at the time* when it fixed those terms. If, everything considered, the terms of the second mortgage did not violate either of the conditions of the regulation when it was executed as approved by the corporation, the mortgage should not be declared void because of a subsequent change of conditions.

In the instant cause the second mortgage to the respondent was approved by the corporation after careful investigation

of all pertinent circumstances bearing on complainant's application for refinancing his two mortgages, one important circumstance being a report of his financial condition by Dun & Bradstreet, Inc. By thus exercising its discretion in accordance with the regulation, the corporation carried out the intent of the act and saved complainant from the loss of his property by foreclosure proceedings.

The complainant has not brought to our attention any case, and we have found none, where, on findings of fact substantially the same as in this cause, the merit of the contention under discussion has been passed upon by any court, although he has cited the cases of *Schram* v. *Welton,* 35 Fed. Supp. 889 (Mich.) and *First Federal Savings & Loan Ass'n* v. *Ansell,* 23 Ohio Opinions 63, which he argues "control the Second Mortgage in suit, and hold that it was void." We have examined those cases and, apart from other possible considerations, we find them so fundamentally different in their facts as to make them clearly inapplicable in the instant cause. A further discussion of those cases can serve no useful purpose. In the circumstances appearing in the record before us, we are of the opinion that respondent's second mortgage is a valid obligation under the H.O.L.C.'s regulation, unless there is merit to complainant's next contention which we will now consider.

This final contention is that respondent's second mortgage is void because it exceeds the difference between the corporation's appraised value and the amount of the first mortgage to the corporation. His argument on this point is grounded on an erroneous premise. It is as follows: Respondent's written consent to take bonds, hereinbefore fully described, shows that he was the record holder of a second mortgage in the sum of $3130, and that he would accept in settlement thereof $1000 in bonds and a new second mortgage for the balance, or $2130. The corporation approved a loan of $8400 on its appraisal of $10,500. The complainant does not claim that the $1000 in bonds which the respondent received from the corporation under the first mortgage to it

of $8400 is to be included in the computation on the point under consideration. But he argues that because the respondent "demanded" a second mortgage for $2130 in the consent which he filed with the corporation, and whereas the difference between the corporation's appraisal and the first mortgage to it is $2100, that therefore the corporation allowed a second mortgage to the respondent which exceeded that difference by $30. This contention is clearly without merit. The plain answer thereto is that respondent's mortgage for $1991.15, which the corporation actually approved and which the respondent finally and unreservedly accepted, is within the limit permitted by the regulation for a lawful second mortgage.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

ON MOTION FOR REARGUMENT

PER CURIAM. The complainants, by leave of court, filed a motion for reargument on several grounds, one of which is that the second mortgage in question is in violation of the H.O.L.C. regulation and therefore void because its terms deprived them of a reasonable opportunity to pay that mortgage. In support of this contention the complainants incorporate in said motion a statement of their expenses under the first and second mortgages and the income that the real estate could yield from May 4, 1934, the date of the second mortgage, to May 4, 1937, when it would be due and payable. Adding to these expenses the principal of the second mortgage, the statement shows a deficit on May 4, 1937 of a relatively small sum.

The corporation was called upon to act in a time of stress and emergency. Looking at the whole matter prospectively, as the H. O. L. C. committee had to do, it was not unreasonable to believe that conditions would improve and that on a reasonable consideration of complainants' financial situation, including wages, they could meet the required obligations. The regulation does not require that the committee's

decision be correct to a mathematical certainty. Because a retrospective view of complainants' income and wages might show some slight variation from the committee's mathematical computation, it would not follow that its decision was unreasonable or arbitrary. Under all the circumstances in evidence, we are of the opinion that the committee exercised reasonable discretion in the matter within the regulation when it allowed the second mortgage in question.

The complainants further contend that the second mortgage was not within the regulation and is void because the attorney for the corporation testified that he was not aware of the regulation and therefore "it is not to be supposed that the other members of the 'Committee' knew about it." The premise does not justify the conclusion, unless all the other evidence and the reasonable inferences therefrom are disregarded. The fact still remains that the terms of the second mortgage as fixed by the corporation were reasonably in accordance with the provisions of the regulation.

After due consideration of all matters urged in complainants' motion for reargument, it is our judgment that no cause has been shown why the opinion of the court, as previously filed in this cause, should not stand.

Motion for reargument denied.